482-14/MF/PJG
FREEHILL HOGAN & MAHAR, LLP
*Attorneys for Plaintiff*
Hapag-Lloyd Aktiengesellschaft
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 (Fax)
Peter J. Gutowski, Esq.
Michael Fernandez, Esq.

14 CV 9949

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAPAG-LLOYD AKTIENGESELLSCHAFT,

                           Plaintiff,

    -against-

U.S. OIL TRADING LLC, O.W. BUNKER
GERMANY GMBH, O.W. BUNKER & TRADING
A/S, ING BANK N.V., CRÉDIT AGRICOLE S.A.,

                       Defendants.

14 Civ. 9949

**COMPLAINT FOR
INTERPLEADER AND
DECLARATORY JUDGMENT**

Plaintiff Hapag-Lloyd Aktiengesellschaft, by its attorneys Freehill Hogan & Mahar LLP, files its Complaint for Interpleader pursuant to 28 U.S.C. §§1335 and 2361 and Declaratory Judgment pursuant to 28 U.S.C. §2201 against U.S. Oil Trading LLC, O.W. Bunker Germany GmbH, O.W. Bunker & Trading A/S, ING Bank N.V., and Crédit Agricole S.A., and respectfully alleges upon information and belief as follows:

## THE PARTIES

1.    Plaintiff Hapag-Lloyd Aktiengesellschaft (hereinafter "HLAG") is an entity organized and existing under the laws of a foreign country with its principal place of business at Ballindaum 25, D-20095 Hamburg, Germany.

426740.1

2.      Defendant U.S. Oil Trading LLC (hereinafter "USOT") is an entity organized and existing under the laws of Delaware, is registered with the Washington Secretary of State and is authorized to do business within Washington State, and maintains its principal place of business at 3001 Marshall Ave., Tacoma, Washington 98421.

3.      Defendant O.W. Bunker Germany GmbH (hereinafter "OW Germany") is an entity organized and existing under the laws of a foreign country with its principal place of business at Neumühlen 11, 22763 Hamburg, Germany.

4.      Defendant O.W. Bunker & Trading AS (hereinafter "OW Denmark") is an entity organized and existing under the laws of a foreign country with its principal place of business at Stigsborgvej 60, DK-9400 Noerresnby, Denmark.

5.      Defendant ING Bank N.V. (hereinafter "ING") is an entity organized and existing under the laws of a foreign country with its principal place of business at Amsterdam Poort, Bijlmerplein 888, 1102 MG Amsterdam, The Netherlands, and does business in this jurisdiction.

6.      Defendant Crédit Agricole S.A. (hereinafter "Agricole") is an entity organized and existing under the laws of a foreign country with its principal place of business at 12 place des Etats-Unis, 92545 Montrouge cedex, France, and does business in this jurisdiction..

JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1333, and this action involves an admiralty and maritime claims under Fed. R. Civ. P. 9(h), inasmuch as this action involves competing claims to the payment for marine bunkers provided to four ocean-going vessels owned and/or operated by HLAG.

8.      This Court also has jurisdiction over this interpleader action pursuant to 28 U.S.C. §1335 in that: a) at least two of the claimants are of diverse citizenship; b) the dispute between

the claimants involves funds in an amount exceeding $500.00, exclusive of interest and costs; and c) HLAG is the stakeholder of the funds and is prepared to file the bond required by §1335, covering amounts claimed against HLAG as more particularly described below.

9.     This Court also has supplemental jurisdiction over the declaratory judgment aspects of this action under 28 U.S.C. §1367.

10.     This Court has personal jurisdiction over Defendant USOT pursuant to 28 U.S.C. §2361 and Rule 4(k) of the Federal Rules of Civil Procedure.   Additionally, this Court has jurisdiction over USOT pursuant to the OW Bunker Group Terms and Conditions of sale for Marine Bunkers (hereinafter "OW Terms and Conditions").

11.     This Court has personal jurisdiction over Defendant OW Germany pursuant to the OW Terms and Conditions.   Additionally, OW Germany continuously and systematically conducts business and/or transacts business in the United States as to the supply of marine bunkers to vessels for purposes of jurisdiction under Fed R. Civ. P. 4(k).

12.     This Court has personal jurisdiction over Defendant OW Denmark pursuant to the OW Terms and Conditions.   Additionally, OW Denmark continuously and systematically conducts business and/or transacts business in the United States as to the supply of marine bunkers to vessels for purposes of jurisdiction under Fed R. Civ. P. 4(k).

13.     This Court has personal jurisdiction over Defendant ING to the extent that it is or may be a third-party beneficiary of the bunker supply contracts at issue in this dispute, and to the extent that it is an alleged assignee of the receivables of OW Germany and OW Denmark. Alternatively, this Court has personal jurisdiction over ING pursuant to New York CPLR §301 as ING is engaged in continuous and systematic business within the State of New York through its New York subsidiary at 1325 Avenue of the Americas, New York, New York 10019.

14.    This Court has personal jurisdiction over Defendant Agricole to the extent that it is or may be a third-party beneficiary of the bunker supply contracts at issue in this dispute, and to the extent that it is an alleged assignee of the receivables of USOT. Alternatively, this Court has personal jurisdiction over Agricole pursuant to New York CPLR §301 as Agricole is engaged in continuous and systematic business within the State of New York through its New York subsidiary at 1301 Avenue of the Americas, New York, New York 10019.

15.    Venue is proper in this District under 28 U.S.C. §1397 and/or the OW Terms and Conditions.

## FACTUAL BACKGROUND

16.    HLAG is the time charterer of the SANTA ROBERTA and SEASPAN HAMBURG, and the registered owner of the VIENNA EXPRESS and SOFIA EXPRESS (collectively the "Vessels"), and had all obligations with respect to the purchase and payment for the supply of bunkers to all of the Vessels.

17.    On or about January 1, 2014, HLAG contracted with OW Germany for the supply of marine bunkers ("bunkers") to vessels during the contract term of January 1, 2014, to December 31, 2014. A copy of the contract between HLAG and OW Germany (hereinafter "HLAG Marine Fuel Contract") is attached hereto as **Exhibit 1**.

18.    Thereafter, HLAG placed orders with OW Germany for the delivery of bunkers to, *inter alia*, the Vessels.

19.    In the normal course of business, HLAG would remit payment to OW Germany for bunkers supplied under the HLAG Marine Fuel Contract. Whatever payment arrangements may have existed downstream of OW Germany to its affiliates and/or subcontractors was unknown to HLAG.

### THE SEASPAN HAMBURG

20.     In or about October 2014, HLAG submitted to OW Germany an order for the supply of bunkers to the M/V SEASPAN HAMBURG, and bunkers were provided at the Port of Tacoma, Washington, ostensibly by USOT.  (Copies of the relevant purchase, sale and delivery documents are annexed hereto as **Exhibit 2**.)

21.     HLAG has been invoiced $1,516,809.83 by OW Germany for the bunkers supplied to the SEASPAN HAMBURG.

22.     HLAG has made no payment with respect to the supply of bunkers to the M/V SEASPAN HAMBURG, and competing claims have been or may be made by Defendants against HLAG and/or that vessel asserting entitlement to the payment from HLAG.  Threats have also been made to arrest the vessel.

### THE SOFIA EXPRESS

23.     In or about October 2014, HLAG submitted to OW Germany an order for the supply of bunkers to the M/V SOFIA EXPRESS, and bunkers were provided at the Port of Tacoma, Washington, ostensibly by USOT.  (Copies of the relevant purchase, sale and delivery documents are annexed hereto as **Exhibit 3**.)

24.     HLAG has been invoiced $1,318,668.24 by OW Germany for the bunkers supplied to the SOFIA EXPRESS.

25.     HLAG has made no payment with respect to the supply of bunkers to the M/V SOFIA EXPRESS, and competing claims have been or may be made by Defendants against HLAG and/or that vessel asserting entitlement to the payment from HLAG.  Threats have also been made to arrest the vessel.

### THE VIENNA EXPRESS

26.     In or about October 2014, HLAG submitted to OW Germany an order for the supply of bunkers to the M/V VIENNA EXPRESS, and bunkers were provided at the Port of Tacoma, Washington, ostensibly by USOT.  (Copies of the relevant purchase, sale and delivery documents are annexed hereto as **Exhibit 4**.)

27.     HLAG has been invoiced $1,431,371.04 by OW Germany for the supply of bunkers to the VIENNA EXPRESS.

28.     HLAG has made no payment with respect to the supply of bunkers to the M/V VIENNA EXPRESS, and competing claims have been or may be made by Defendants against HLAG and/or the vessel asserting entitlement to the payment from HLAG.

29.     Threats have also been made to arrest the vessel, and in response to a threat from Defendant USOT, a Letter of Undertaking was issued by HLAG's underwriter in the amount of $1,725,000 to avoid the arrest of the VIENNA EXPRESS.  (A copy of the Letter of Undertaking is attached hereto as **Exhibit 6**.)

### THE SANTA ROBERTA

30.     In or about October 2014, HLAG submitted to OW Germany an order for the supply of bunkers to the M/V SANTA ROBERTA, and bunkers were provided at the Port of Tacoma, Washington, ostensibly by USOT.  (Copies of the relevant purchase, sale and delivery documents are annexed hereto as **Exhibit 5**.)

31.     HLAG was invoiced $1,495,860.94 by OW Germany for the supply of bunkers to the M/V SANTA ROBERTA

32.     HLAG paid OW Germany with respect to the supply of bunkers to the M/V SANTA ROBERTA, but competing claims have been or may be made by the other defendants

asserting entitlement to a further payment from HLAG and/or claiming lien rights against the vessel with respect to that supply.

**FIRST CAUSE OF ACTION – INTERPLEADER**
**WITH RESPECT TO THE M/V SEASPAN HAMBURG AND M/V SOFIA EXPRESS**

33.    Plaintiff repeats and reasserts each and every allegation set forth above in paragraphs 1-32, inclusive, as if fully set forth at length herein.

34.    There are various competing interests for the amounts due and owing by HLAG for the bunkers supplied to the SEASPAN HAMBURG and SOFIA EXPRESS, including but not limited to a claim by OW Germany and/or its parent entity OW Denmark for payment under the HLAG Marine Fuel Contract (Ex. 1), a claim by Agricole and/or ING as purported assignees and/or secured parties, and a claim by USOT, the purported physical supplier of the bunkers, asserting a maritime lien against these two vessels.

35.    HLAG is unsure of which party to pay for the bunkers supplied to these two vessels and accordingly has not made any payments to anyone in response to the competing demands.

36.    Based on the foregoing, HLAG, a disinterested stakeholder, has been and will be subject to multiple claims for payment for the bunkers supplied to the SEASPAN HAMBURG and the SOFIA EXPRESS, and the interests of the defendants in the property subject to this interpleader are adverse as there is a dispute as to which entity or entities are entitled to payment from HLAG for the bunkers.

37.    HLAG has a reasonable fear of multiple liabilities because of these adverse claims including, but not limited to, the threat of *in rem* seizure of the two vessels or other property owned by HLAG.

38.     In accordance with 28 U.S.C. §1335(a)(1) and 28 U.S.C. §2361, HLAG has or will post a bond covering and securing the indebtedness to the appropriate party (once determined by the Court), and is therefore entitled to relief in the form of: (a)  an order compelling any and all claimants, including Defendants, to file in this proceeding their claims for payment for the bunkers supplied; (b)  an order, in accordance with 28 U.S.C. §1335(a)(1) and §2361, precluding the commencement of or continuation of any action or proceeding anywhere to recover payment relating to the supply of the bunkers, including but not limited to arrest, attachment or other restraint of the vessels or any other property of HLAG; and (c) ultimately, an order determining the party or entity to which payment should be made and discharging HLAG from any liability after payment (as secured by the bond) is effected to the party or entity so designated by the Court to receive the payment for the supply of the bunkers to the two vessels identified in this First Cause of Action.

### SECOND CAUSE OF ACTION – INTERPLEADER, OR IN THE ALTERNATIVE, DECLARATORY JUDGMENT ACTION WITH RESPECT TO THE M/V VIENNA EXPRESS

39.     Plaintiff repeats and reasserts each and every allegation set forth above in paragraphs 1-32, inclusive, as if fully set forth at length herein.

40.     There are various competing interests for the amounts due and owing by HLAG for the bunkers supplied to the VIENNA EXPRESS, including but not limited to a claim by OW Germany and/or its parent entity OW Denmark for payment under the HLAG Marine Fuel Contract (Ex. 1), a claim by Agricole and/or ING as purported assignees and/or secured parties, and a claim by USOT, the purported physical supplier of the bunkers, asserting a maritime lien against these two vessels.

41.     HLAG is unsure of which party to pay for the bunkers supplied to this vessel and accordingly has not made any payments to anyone in response to the competing demands.

42.    However, in response to a threat of arrest of the vessel by USOT, and to enable the vessel to continue to trade, HLAG was compelled to provide security to USOT in the form of the Letter of Undertaking described above.

43.    The proposed bond tendered with the filing of this complaint includes security for the payment that is due from HLAG to whomever the Court determines is entitled to that payment, including USOT, and the Letter of Undertaking should be cancelled and returned because there can be only one payment and the bond, as drafted, will fully secure any payment due to USOT to the extent it is determined to be the party entitled to receive same.

44.    Further, to the extent the bond acts as security for USOT and all other claimants, the substitution of the bond for the Letter of Undertaking enables the competing claims to be treated in an interpleader context and fosters judicial economy.

45.    Based on the foregoing, HLAG prays for: (a) an order directing the return of the Letter of Undertaking at which point the security under the bond (filed or to be filed) with respect to the VIENNA EXPRESS will be automatically activated; (b) an order compelling any and all claimants, including Defendants, to file in this proceeding their claims for payment for the bunkers supplied; (c) an order, in accordance with 28 U.S.C. §1335(a)(1) and §2361, precluding the commencement of or continuation of any action or proceeding anywhere to recover payment relating to the supply of the bunkers, including but not limited to an order precluding the arrest, attachment or other restraint of the vessels or any other property of HLAG, and (d) ultimately, an order determining the party or entity to which payment should be made and discharging HLAG from any liability after payment (as secured by the bond) is effected to the party or entity so designated by the Court to receive payment for the supply of the bunkers to the vessel identified in this Second Cause of Action.

46.     In the alternative, and if the Letter of Undertaking is not returned and cancelled, HLAG seeks a declaration that USOT has no maritime lien as to the supply of bunkers to the VIENNA EXPRESS, and that therefore, all obligations under the Letter of Undertaking are cancelled, and that upon payment to the entity determined by the Court to be entitled to the payment, HLAG is discharged and shall have no further liability to anyone for the supply of the bunkers to this vessel to any party or entity.

### THIRD CAUSE OF ACTION – INTERPLEADER OR IN THE ALTERNATIVE DECLARATORY JUDGMENT WITH RESPECT TO THE M/V SANTA ROBERTA

47.     Plaintiff repeats and reasserts each and every allegation set forth above in paragraphs 1-32, inclusive, as if fully set forth at length herein.

48.     Despite the payment already made by HLAG to OW Germany for the supply of bunkers to the SANTA ROBERTA, there are or may be claims by other entities, including but not limited to USOT, which demand that HLAG pay again.

49.     More specifically, USOT claims entitlement to a maritime lien on the SANTA ROBERTA and maintains that HLAG's payment to OW Germany did not extinguish the lien, providing USOT with a right of arrest of the vessel and the right to receive a further payment from HLAG.

50.     USOT has and continues to threaten the arrest of the vessel later this week.

51.     HLAG maintains that its payment to OW Germany extinguished all claims and liens with respect to the bunker supply, but HLAG nonetheless has a reasonable fear of multiple liabilities because of these adverse claims including, but not limited to, the threat of *in rem* seizure of the vessel or other property owned by HLAG.

52.     In accordance with 28 U.S.C. §1335(a)(1) and 28 U.S.C. §2361, HLAG has or will post a bond covering and securing the indebtedness, if any (which HLAG denies), to the