UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HAPAG-LLOYD AKTIENGESELLSCHAFT,

                                   14 Civ. 9949 (VEC)

          Plaintiff,


     -against-


U.S. OIL TRADING LLC, O.W. BUNKER
GERMANY GMBH, O.W. BUNKER & TRADING
A/S, ING BANK N.V., CRÉDIT AGRICOLE S.A.,

               Defendants.
----------------------------------------------------------------X



**U.S. OIL TRADING LLC' S MEMORANDUM OF LAW
(1) IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION,
PURSUANT TO 28 U.S.C. §1335 & §2361, FOR ORDER APPROVING
BOND AND RESTRAINING ANY OTHER ACTIONS; AND (2) IN SUPPORT
OF EMERGENCY ORDER TO SHOW CAUSE WHY THE COURT'S ORDER
<u>DATED DECEMBER 19, 2014, SHOULD NOT BE VACATED OR MODIFIED</u>**



**CLYDE & CO US LLP**
John R. Keough, III
Casey D. Burlage
Corey R. Greenwald
George G. Cornell
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, New York 10174
<u>Tel.:</u>  (212) 710-3900
<u>Fax</u>: (212) 710-3950

*Attorneys for Defendant
U.S. Oil Trading LLC*

## TABLE OF CONTENTS

**Preliminary Statement**................................................................................1

**STATEMENT OF FACTS**.........................................................................5

**Argument**.................................................................................................10

    **I.**    **THE COURT SHOULD ENTER AN ORDER TO
SHOW CAUSE ON AN EMERGENCY BASIS WHY THE
RESTRAINING ORDER SHOULD NOT BE VACATED OR MODIFIED**...........10

        **A.**  **USOT Has Valid Maritime Liens Against the Vessels,
and Previously Filed Two Separate *In Rem* Actions Against
Those Vessels in the Federal District Courts in California and
Washington State, Respectively, in Which Those Courts Granted
Orders of Arrest to Enforce USOT's Maritime Liens; the Restraining
Order Improperly Obstructs Those Valid Orders in the First Filed Actions**...11

        **B.**  **The Restraining Order Improperly Deprives USOT
of its Statutory Right to Enforce its Valid Maritime
Liens Against the Vessels in the First-Filed Actions**............................12

        **C.**  **The Restraining Order Ignores the Governing Procedure for Providing
Security for In Rem Claims in Accordance with the Supplemental Rules**........15

        **D.**  **The Restraining Order is Overly Broad and Unsupported**................17

        **E.**  **Plaintiff Fails to Show That it is Entitled to Injunctive Relief**............20

        **F.**  **The Restraining Order Deprives USOT
of its Property Without Due Process of Law**........................................22

        **G.**  **This Court Constitutes an Improper Venue for this Action**..............25

**CONCLUSION**.........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am.-Hawaiian Steamship Co. v. Bowring & Co.*,
150 F. Supp. 449 (S.D.N.Y. 1957) ...........................................................................23

*Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty*,
608 F.2d 197 (5th Cir. 1979) ...................................................................................15

*Bank of Am., N.A. v. Morgan Stanley & Co.*,
10 Civ. 6322 (RJH), 2011 U.S. Dist. LEXIS 68157 (S.D.N.Y. June 24, 2011) ...........................19

*Birch Shipping Ltd. v. O.W. Bunker China Ltd. (HK), et al.*,
14-CV-9282(VEC)..................................................................................................19

*Bominflot, Inc. v. The M/V Henrich S*,
465 F.3d 144 (4th Cir. 2006) ...................................................................................15

*Commerce & Indus. Ins. Co. v. Cablewave Ltd.*,
412 F.Supp. 204 (S.D.N.Y 1976) .............................................................................11

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008).....................................................................................11

*Equilease Corp. v. M/V Sampson*,
793 F.2d 598 (5th Cir. 1986) ...................................................................................14

*Gulf Oil Trading Co., a Div. of Gulf Oil Co. v. M/V CARIBE MAR*,
757 F.2d 743 (5th Cir. 1985) ..............................................................................13, 14

*Holm v. First Unum Life Ins. Co.*,
7 F.App'x. 40 (2d Cir. 2001) ...................................................................................23

*Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*,
475 F.3d 56 (2d Cir. 2007)..................................................................................20, 21

*Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd.*,
982 F.2d 765 (2d Cir. 1992)................................................................................12, 13

*Marine Fuel Supply & Towing Inc. v. M/V Ken Lucky*,
869 F.2d 473 (9th Cir. 1988) ...................................................................................15

*Mark E. Mitchell, Inc. v. Charleston Library Soc.*,
114 F.Supp.2d 259 (S.D.N.Y. 2000) .........................................................................21

*In re Olivas,*
129 B.R. 122 (Bankr. W.D. Tex. 1991) .......................................................................23

*Osis v. 1993 GF P'ship, L.P.,*
No. 3:99-CV-0797(AVC), 2000 WL 840050 (D. Conn. Mar. 31, 2000) .....................26

*Pilot Enterprises, Inc. v. Brodosplit Inc.,*
391 Fed.Appx. 923 (2d Cir. 2010)............................................................................22

*Prudential Ins. Co. of Am. v. Shawver,*
208 F. Supp. 464 (W.D. Mo. 1962) ..........................................................................25

*Sotheby's, Inc. v. Garcia,*
802 F.Supp. 1058 (S.D.N.Y. 1992) ...........................................................................19

*Star Ins. Co. v. Cedar Valley Express, LLC,*
273 F.Supp.2d 38 (D.D.C. 2002) ..............................................................................19

*Triodetic Inc. v. Statue of Liberty IV,*
LLC, No. 12 Civ. 6348(KBF), 2013 WL 6017926 (S.D.N.Y. Nov. 6, 2013) ..............15

*U.S. v. Major Oil Corp.,*
583 F.2d 1152 (10th Cir. 2010) ................................................................................19

*Wasserman v. Fid. & Deposit Co. of Maryland,*
490 F. Supp. 564 (S.D.N.Y. 1979) ...........................................................................18

**Statutes**

28 U.S.C. § 1335 ................................................................................11, 18, 19, 26

28 U.S.C. § 1397 ................................................................................................26

28 U.S.C. § 2361 ........................................................................................ *passim*

46 U.S.C. § 31342 ......................................................................................12, 13, 15

**Other Authorities**

7 Wright and Miller, *Federal Practice and Procedure* § 1717 ....................................25

8 MATTHEW BENDER, BENEDICT ON ADMIRALTY § 7.02[C] (7th ed. 2008) ................22

Fed. R. Civ. P. 65 ...........................................................................................21, 25

Supplemental Rule C ........................................................................................10, 12

Supplemental Rule E.................................................................................12, 16, 17, 19

U.S. Const. Art V........................................................................................................................23

## Preliminary Statement

U.S. Oil Trading LLC ("USOT"), by its attorneys, Clyde & Co US LLP, respectfully submits this memorandum of law (1) in opposition to the *ex parte* motion for a restraining order by Hapag-Lloyd Aktiengesellschaft ("plaintiff" or "HLAG") dated December 17, 2014; and (2) in support of USOT's emergency request for an order to show cause why the Court's Order dated December 19, 2014 (the "Restraining Order") should not be vacated or modified.[1]

As set forth below, the Court's Restraining Order should be vacated or modified to allow USOT to arrest the M/V SOFIA EXPRESS, M/V SANTA ROBERTA and M/V SEASPAN HAMBURG (the "Vessels"), in accordance with the previously issued orders of two separate federal district courts: the Central District of California and the Western District of Washington, where the vessels were subject to the *in rem* jurisdiction of these courts.  (Keough Decl., Exs. A-E)[2]  This Court's Restraining Order last Friday, December 19, intervened and wrongly obstructed the service of process *in rem* on the vessels as ordered by those courts. Indeed, one of the prior actions by USOT complies with the very security that plaintiff previously agreed on November 26 with USOT to avoid arrest of the M/V VIENNA EXPRESS, an action in the Western District of Washington, which by the terms of that security the parties expressly agreed was the "exclusive jurisdiction and venue."   (*Id*. at Ex. F at ¶ 2)

The Court should follow the reasoning of Judge Castel who, on November 24,

---

[1] USOT reserves all rights, claims and defenses in making this submission, including but not limited to (1) its right to assert a claim against the plaintiff *in personam*; (2) its right to assert a claim against the alleged funds in the Court's registry; and (3) any defenses USOT may assert in its first responsive pleading to plaintiff's complaint for interpleader, including but not limited to lack of personal jurisdiction, subject matter jurisdiction, service of process and venue.

[2] References herein the "Keough Decl." are to the Declaration of John R. Keough, III, dated December 22, 2014.

2014, modified a similar restraining order in a related case to allow the defendant physical supplier, Chemoil Latin America, Inc. ("Chemoil"), to arrest the vessel allegedly owned by plaintiff Birch Shipping Ltd. ("Birch Shipping").   In so ordering, Judge Castel recognized Chemoil's statutory right to enforce its maritime lien against the vessel M/V BIRCH 6 by commencing an action against that vessel *in rem* and to serve maritime process against the vessel before it departed the jurisdiction of the U.S. courts.  (*Id*. at Ex. G at ¶ 1)

          In seeking such broad *ex parte* relief, plaintiff (1) failed to allege a basis for an alleged contract with USOT, or any other grounds for this Court to exercise personal jurisdiction over USOT; (2) ignored the key fact that USOT's rights against the Vessels arise by operation of law, separate and apart from any alleged contract; and (3) disregards that there are no competing claims against the M/V SANTA ROBERTA since plaintiff concedes that it paid O.W. Germany GmbH ("OW Germany") for the delivery of bunker fuel to that vessel.  Indeed, plaintiff has failed to sustain its burden of proof that there are competing claims against any of the Vessels. Plaintiff further ignores that, by depositing the funds into the Court's registry, plaintiff tendered payment only of its *in personam* debt to its alleged contractual counterparty, OW Germany, *not* the undisputed debt owed by the Vessels *in rem* to USOT.  *See* Complaint at ¶ 17.

          Moreover, plaintiff ignores that, on November 26, its counsel had essentially agreed on the form and amounts of security with counsel for USOT to avoid arrest of the Vessels: either three separate P&I Club LOUs in the same form as that agreed for M/V VIENNA EXPRESS or a bond in surety and form agreeable to USOT to the same effect as the LOU.

          Plaintiff's *ex parte* application and the Court's Restraining Order unduly prejudice USOT's right (1) to assert its valid, statutory maritime liens against the Vessels *in rem*, plus interest, costs and attorneys' fees; and (2) to arrest the Vessels and if necessary have them

sold with the proceeds of any sales to be used to pay the Vessels' debts to USOT.  As set forth below, Congress has expressly recognized the right of a physical supplier of necessaries, such as USOT, to arrest and sell a vessel to enforce a valid maritime lien as the cornerstone of the Maritime Commercial Instruments and Liens Act, 46 U.S.C. §§ 31301, *et seq*. (the "Lien Act"). The Court's Restraining Order and plaintiff's request for interpleader wholly ignores this statutory right.

It is undisputed that USOT will suffer irreparable harm if the Restraining Order is not vacated or modified.  Upon information and belief, the Vessels could depart the jurisdiction of the U.S. District Courts in Washington and California as soon as today, if they have not done so already.  USOT commenced its first-filed actions and obtained arrest orders against the Vessels in those jurisdictions prior to the Court's issuance of the Restraining Order.  The U.S. District Courts in Washington and California are the only courts that may exercise *in rem* jurisdiction against the Vessels as a matter of law since the Vessels are (or were) located presently within the jurisdiction of those courts.

The Restraining Order now blocks perhaps USOT's only opportunity to obtain security for its claims against the Vessels in the first-filed actions against the Vessels.  This Court, despite lacking *in rem* jurisdiction over the Vessels, deprived USOT of its statutory right to enforce its valid maritime liens against the Vessels.  In the instant case, the Vessels are neither parties to this action nor within the Court's *in rem* jurisdiction.  Additionally, the Restraining Order ignores the requirements of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action (the "Supplemental Rules"), which govern the procedure for *in rem* admiralty cases.

Moreover, by granting such broad *ex parte* relief, the Court essentially

3

adjudicated the merits of USOT's claims against the Vessels - - despite plaintiff's failure to properly serve USOT with the Restraining Order in accordance with the express requirements 28 U.S.C. § 2361.  *See* Dkt. 6.  Allowing USOT to obtain security authorized by the Lien Act in no respect prejudices any defense of plaintiff.  Any security obtained by USOT by arresting the Vessels would be extinguished if the Vessels are not liable for USOT's claims.  However, if plaintiff does not prevail, the Court will have deprived USOT of its statutory right to obtain security to enforce any judgment against the Vessels.  USOT will have been irreparably harmed if the Vessels are damaged, sink or never return to a U.S. port, if the security tendered by plaintiff and accepted by the Court is insufficient to pay all claims.

On this record, equity favors physical suppliers such as USOT who (1) relied on the credit of the Vessels when delivering the bunker fuel, which is presumed under the Lien Act; (2) has not been paid for the value of its bunker fuel delivered to the Vessels; and (3) is now enjoined in the first-filed cases from enforcing its statutory rights to security *for USOT's claims*, not the claims of any other party named as a defendant in the instant case.

Additionally, the Restraining Order prevents USOT from enforcing its maritime liens while the Vessels are allowed to trade worldwide and incur additional liens by foreign creditors other than USOT such as mortgagees, subsequent suppliers of necessaries and tort and contract claimants.

For the reasons set forth below, USOT respectfully requests that the Court (1) issue an order to show cause why the Court's Restraining Order should not be vacated or modified on an emergency basis to allow USOT to arrest the Vessels or obtain security in lieu of the Vessels' arrest before their imminent departure from the jurisdiction of the U.S. courts; and (2) order HLAG to direct the Vessels to remain at the U.S. ports where they are now located and

remain there until further order of the Court after a hearing on the order to show cause.

## STATEMENT OF FACTS

### A.  M/V VIENNA EXPRESS

On or about October 15, 2014, the owners and/or operators and/or charterers and/or the agents of the M/V VIENNA EXPRESS entered into an agreement with brokers O.W. Bunker & Trading A/S ("OWB") to arrange for the delivery of bunker fuel to the vessel at the port of Tacoma, Washington on or about October 18, 2014.  On or about the same day, USOT, as sellers, and OWB, as buyers, entered into an agreement for the sale and delivery of approximately 2,700 metric tons of bunkers to the vessel at the port of Tacoma, Washington on or about October 17, 2014.  (Keough Decl., Ex. H)

On or about October 18, 2014, USOT delivered approximately 2,710.93 metric tons of bunker fuel to the vessel at the port of Tacoma, Washington, which the vessel accepted and acknowledged by stamping USOT's bunker delivery receipt for the delivery. USOT's bunker delivery receipt states in relevant part:

> DISCLAIMERS:  No disclaimer stamp of any type or form will be accepted on this bunker certificate, nor should any such stamp . . . alter, change or waive U.S. Oil's Maritime Lien against the vessel or waive the vessel's ultimate responsibility and liability for the debt incurred through this transaction.
>
> *        *        *        *
>
> MARITIME LIENS:  All disputes arising out of this transaction shall be interpreted and enforced in accordance with the general maritime law of the United States of America and all statutes related thereto.

(*Id*. at Ex. I)[3]

---

[3] USOT's bunker delivery receipts for the deliveries of bunker fuel to the M/V SOFIA EXPRESS, M/V SANTA ROBERTA and M/V SEASPAN HAMBURG contain identical provisions.

On or about October 18, 2014, USOT issued its Invoice No. BWTD 83451 to OWB in the amount of $1,414,594.53 for the delivery of bunkers to the vessel.  (*Id*. at Ex. J) Pursuant to Invoice No. BWTD 83451, payment was due to USOT on or before November 17, 2014.  (*Id*.)  USOT has not been paid by the vessel or OWB for the amounts due under Invoice No. BWTD 83451 despite repeated demands by USOT for payment.

## B.  M/V SOFIA EXPRESS

On or about October 28, 2014, the owners and/or operators and/or charterers and/or the agents of the M/V SOFIA EXPRESS entered into an agreement with brokers OWB to arrange for the delivery of bunker fuel to the vessel at the port of Tacoma, Washington on or about October 29, 2014.  On or about the same day, USOT, as sellers, and OWB, as buyers, entered into an agreement for the sale and delivery of approximately 2,700 metric tons of bunkers to the vessel at the port of Tacoma, Washington on or about October 29, 2014.  (*Id*. at Ex. K)  On or about October 29, 2014, USOT delivered approximately 2,680.22 metric tons of bunker fuel to the vessel at the port of Tacoma, Washington, which the vessel accepted and acknowledged by stamping USOT's bunker delivery receipt for the delivery.  (*Id*. at Ex. L)

On or about October 29, 2014, USOT issued its Invoice No. BWTD 83463 to OWB in the amount of $1,315,507.80 for the delivery of bunkers to the vessel.  (Id. at Ex. M) Pursuant to Invoice No. BWTD 83463, payment was due to USOT on or before November 28, 2014.  (*Id*.)  USOT has not been paid by the vessel or OWB for the amounts due under Invoice No. BWTD 83463 despite repeated demands by USOT for payment.

## C.  M/V SANTA ROBERTA

On or about October 6, 2014, the owners and/or operators and/or charterers and/or the agents of the M/V SANTA ROBERTA entered into an agreement with brokers OWB to

arrange for the delivery of bunker fuel to the vessel at the port of Tacoma, Washington on or about October 8, 2014.  On or about the same day, USOT, as sellers, and OWB, as buyers, entered into an agreement for the sale and delivery of approximately 2,700 metric tons of bunkers to be delivered to the vessel at the port of Tacoma, Washington on or about October 9, 2014.  (*Id*. at Ex. N)

On or about October 9, 2014, USOT delivered approximately 2,700.11 metric tons of bunker fuel to the vessel at the port of Tacoma, Washington, which the vessel accepted and acknowledged by stamping USOT's bunker delivery receipt for the delivery.  (*Id*. at Ex. O) On or about October 9, 2014, USOT issued its Invoice No. BWTD 83441 to OWB in the amount of $1,481,860.28 for the delivery of bunkers to the vessel.  (*Id*. at Ex. P)  Pursuant to Invoice No. BWTD 83441, payment was due to USOT on or before November 8, 2014.  (*Id*.)  USOT has not been paid by the vessel or OWB for the amounts due under Invoice No. BWTD 83441 despite repeated demands by USOT for payment.  Plaintiff alleges that it has paid OW Germany for the supply of bunkers to the M/V SANTA ROBERTA.  Complaint at ¶¶ 32 and 48

### D. **M/V SEASPAN HAMBURG**

On or about October 13, 2014, the owners and/or operators and/or charterers and/or the agents of the M/V SEASPAN HAMBURG entered into an agreement with brokers OWB to arrange for the delivery of bunker fuel to the vessel at the port of Tacoma, Washington on or about October 16, 2014.  On or about the same day, USOT, as sellers, and OWB, as buyers, entered into an agreement for the sale and delivery of approximately 2,900 metric tons of bunkers to be delivered to the vessel at the port of Tacoma, Washington on or about October 16, 2014.  (*Id*. at Ex. Q)

On or about October 16, 2014, USOT delivered approximately 2,900.21 metric

tons of bunker fuel to the vessel at the port of Tacoma, Washington, which the vessel accepted and acknowledged by stamping USOT's bunker delivery receipt for the delivery.  (*Id*. at Ex. R) On or about October 16, 2014, USOT issued its Invoice No. BWTD 83450 to OWB in the amount of $1,507,408.99 for the delivery of bunkers to the vessel. (*Id*. at Ex. S)  Pursuant to Invoice No. BWTD 83450, payment was due to USOT on or before November 17, 2014.  (*Id*.) USOT has not been paid by the vessel or OWB for the amounts due under Invoice No. BWTD 83450 despite repeated demands by USOT for payment.

**E.  The LOU and USOT's First-Filed Actions in the
       U.S. District Courts in Washington and California.**

Several weeks before USOT commenced the first-filed actions in Washington and California, counsel for HLAG and USOT had agreed to terms of security for USOT's claim against the M/V VIENNA EXPRESS in the form of a letter of undertaking issued by plaintiff's protection and indemnity association ("P&I Club"), as agents of HLAG (the "LOU").  (*Id*. at ¶ 3 and Ex. F)  Pursuant to the express terms of the LOU, HLAG agreed and is obligated to file or cause to be filed an appearance and claim of owner on behalf of the M/V VIENNA EXPRESS in the U.S. District Court for the Western District of Washington, "which Court shall have exclusive in rem jurisdiction and venue over the Claim[.]"  (*Id*. at Ex. F at ¶ 2)  HLAG was also obligated pursuant to the express terms of the LOU "to cause to be provided, no later than December 10, 2014, security in the form of an underwriter's surety bond, issued in a form and by a surety subject to USOT's approval . . . in the total sum of $1,725,000 in favor of [USOT], or some other form of security agreeable to USOT . . . ."  (*Id*.)  HLAG and its P&I Club have failed and refused to comply with their obligations under the LOU.  (Keough Decl., at ¶ 3)

On or about November 26, 2014, plaintiff's counsel and USOT's counsel agreed that USOT would accept letters of undertaking for the balance of USOT's claims against the

M/V SOFIA EXPRESS, M/V SANTA ROBERTA and M/V SEASPAN HAMBURG, on the same terms as the LOU for USOT's claim against the M/V VIENNA EXPRESS, in exchange for USOT's promise not to arrest the Vessels to enforce its maritime liens.  (*Id*. at ¶ 4)  On November 28, 2014, plaintiff's P&I Club issued the LOU for USOT's claim against the M/V VIENNA EXPRESS.  (*Id*. at ¶ 5)  However, despite repeated requests by USOT's counsel by email and telephone over the next two weeks, plaintiff's counsel failed to respond or to provide USOT with drafts of the letters of undertaking for the M/V SOFIA EXPRESS, M/V SANTA ROBERTA and M/V SEASPAN HAMBURG for the balance of USOT's claims.  (*Id*. at ¶ 6)

In the meantime, the M/V SOFIA EXPRESS was approaching the port of Tacoma, Washington and the M/V SANTA ROBERTA and M/V SEASPAN HAMBURG were approaching the port of Los Angeles, California.  Having heard no response from plaintiff's counsel over the last week or so, on December 17, 2014, USOT commenced the first-filed actions against those vessels, *in rem*, in the U.S. District Courts in Washington and California to protect USOT's statutory right to enforce its maritime liens against the Vessels while the Vessels were in the jurisdiction of the U.S. courts, in the event plaintiff's counsel reneged on their earlier agreement.  (*Id*. at ¶ 7)

**F.  By Filing the Instant Action, Plaintiff Breached the LOU and Its
Agreement to Provide Security for the Balance of USOT's Claims.**

On December 18, 2014, USOT's counsel handling the prior cases in California received an email from plaintiff's counsel less than an hour before the "without prejudice" status conference before this Court, at which the attorney appeared on behalf of another client.  USOT was not served with copies of plaintiff's initial pleadings, and USOT's counsel was not authorized to accept service, ppear or otherwise act on behalf of USOT at the December 18 conference before the Court.  (*Id*. at ¶ 8 and Ex. T)

On December 19, 2014, USOT's counsel received another email from HLAG's counsel attaching the Court's Restraining Order.  (*Id*. at ¶ 9)  The Restraining Order states: "WHEREAS U.S. Oil Trading LLC was given notice of this application, through notifying an attorney of Clyde & Co, a law firm that represents U.S. Oil Trading LLC but chose not to appear to answer whether the requested emergency relief should be entered[.]"  Dkt. 5 at 1.  In fact, USOT had not been given notice in time to appear as stated in the Order and did not "choose" not to appear.

On December 19, 2014, USOT's counsel informed the U.S. District Courts in Washington and California, and the U.S. Marshals in those jurisdictions, that the Court had issued the Restraining Order.  USOT's counsel also asked the U.S. Marshal to cease all efforts underway to serve the arrest orders against the M/V SOFIA EXPRESS, M/V SANTA ROBERTA and M/V SEASPAN HAMBURG until further notice.  Upon information and belief, the Vessels are or will soon be in the jurisdiction of the U.S. District Courts in Washington and California.

**Argument**

**I.**

**THE COURT SHOULD ENTER AN ORDER
TO SHOW CAUSE ON AN EMERGENCY BASIS WHY THE
<u>RESTRAINING ORDER SHOULD NOT BE VACATED OR MODIFIED.</u>**

It is undisputed that USOT will suffer irreparable harm if the Restraining Order is not vacated or modified on an emergency basis.  The Vessels will depart the jurisdiction of any U.S. federal court within the next day or so, if one or more has not already done so.  Accordingly, the Court should enter an order to show cause on an emergency basis why the Restraining Order should not be vacated or modified.

**A. USOT Has Valid Maritime Liens Against the Vessels,**
   **and Previously Filed Two Separate *In Rem* Actions Against**
   **Those Vessels in the Federal District Courts in California and**
   **Washington State, Respectively, in Which Those Courts Granted**
   **Orders of Arrest to Enforce USOT's Maritime Liens; the Restraining**
   **Order Improperly Obstructs Those Valid Orders in the First-Filed Actions.**

USOT filed the actions against the Vessels in the U.S. District Courts in Washington and California before plaintiff commenced the instant action. (Keough Decl., Exs. A-B) Moreover, it is undisputed that the U.S. District Courts in Washington and California issued arrest orders against the Vessels prior to this Court issuing the Restraining Order. (*Id*. at Exs. C-E) "As a general rule, [w]here there are two competing lawsuits, the first suit should have priority." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (internal quotations omitted). This Court has previously recognized that, in exercising its discretion to issue an injunction pursuant to 28 U.S.C. § 2361, "the court is guided by the principles that (1) a federal court should not undertake lightly to enjoin proceedings in another federal court . . . ; and (2) interpleader relief may be denied if there is an adequate remedy elsewhere." *Commerce & Indus. Ins. Co. v. Cablewave Ltd.*, 412 F.Supp. 204, 207 (S.D.N.Y 1976) (citations omitted). "Absent exceptional circumstances, the federal court first seized of an action should be the one to adjudicate it." *Id.* In *Cablewave*, two plaintiff insurers which feared multiple liability under an insurance policy filed an interpleader action under 28 U.S.C. § 1335. *Id.* at 205-6. Shortly before the interpleader was commenced, two claimants to the insurance proceeds commenced a lawsuit against the insurers in the U.S. District Court for the Middle District of Alabama. *Id.* at 206. In rejecting the plaintiff's request for a restraining order pursuant to 28 U.S.C. § 2361, the New York federal court recognized: "That plaintiffs here have correctly perceived their dilemma as one appropriate for interpleader relief . . . does not mean they should have such relief in a federal forum of their own choosing when an action concerning

11

the same subject matter has already been commenced in another federal court where interpleader is equally available." *Id.* at 207.

The same rule applies here with equal force.  It is undisputed that (1) USOT commenced the actions against the Vessels in the U.S. District Courts in Washington and California before plaintiff commenced the instant case and before the Court issued the Restraining Order; and (2) the Vessels are or will soon be within the jurisdiction of the U.S. District Courts in Washington and California.

**B.  The Restraining Order Improperly Deprives USOT**
   **of its Statutory Right to Enforce its Valid Maritime**
   **Liens Against the Vessels in the First-Filed Actions.**

The Court's broad restraining order ignores the fundamental right under U.S. maritime law of a physical supplier of necessaries, such as USOT, to arrest a vessel and to have it sold at a judicial auction if necessary to enforce a valid maritime lien.  46 U.S.C. § 31342; *see also* Supplemental Rules C(1)-(4) and E(9).  "Unlike other security arrangements, the maritime lien is for the benefit of both the ship and its creditors."  *Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd.*, 982 F.2d 765, 768 (2d Cir. 1992).  "On the one hand, it enables ships to obtain repairs and supplies on its own account that might not otherwise be available." *Id*. (citing *Piedmont & George's Creek Coal C. v. Seaboard Fisheries Co.*, 254 U.S.  1, 3 (1920)).  "On the other hand, *it gives the creditor a special property in the ship*, which subsists from the moment the debt arises, *and it gives him a right to have the ship sold so that his debt may be paid out of the proceeds of the sale.*  It is a right in the vessel, a jus in re." *Id*. (citations and internal quotations omitted) (emphasis added).

The Lien Act provides maritime liens for "necessaries" provided to a vessel. Section 31342 of the Lien Act provides in relevant part:

### § 31342.  Establishing maritime liens

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner --

(1) has a maritime lien on the vessel;

(2) **may bring a civil action in rem to enforce the lien**; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342 (emphasis added).

The Lien Act also provides a supplier of necessaries to a vessel such as USOT the benefit of a presumption that the furnishing of necessaries was accomplished on the credit of the vessel. *Id.*  Instead, the supplier's claim for furnishing such necessaries to the vessel is secured by the supplier's statutory lien against the vessel as a matter of law.  This venerable statutory lien right in favor of suppliers such as USOT reflects the policy concern of Congress that suppliers frequently do not have adequate opportunity to investigate the creditworthiness of the entity that has ordered the supplies due to the transitory nature of the vessel.   Indeed, Congress has mandated that physical suppliers like USOT are ***not*** required to investigate the credit of the vessel interests, such as HLAG, or brokers such as OWB and/or OW Germany.  *See Gulf Oil Trading Co., a Div. of Gulf Oil Co. v. M/V CARIBE MAR*, 757 F.2d 743, 749 (5th Cir. 1985) (recognizing same).

Prior to the 1971 amendments to the Lien Act, a supplier that provided necessaries to a vessel would not obtain a maritime lien against a vessel for the necessaries provided if the supplier "knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party . . . or for any other reason, the person ordering

the . . . supplies, or other necessaries was without authority to bind the vessel therefor." *Id.* at

747 (quoting Lien Act prior to the 1971 amendments). Congress amended section 973 of the

Lien Act in 1971 by removing the suppliers' duty of inquiry. *Id.* at 747-48. The Fifth Circuit

Court of Appeals summarized the Congressional mandate as follows:

> In 1971, reacting to concerns that the difficulty of obtaining a lien
> was causing crippling losses to stevedoring contractors and others
> supplying services and goods to vessels, Congress amended
> section 973 of the Lien Act by deleting the language imposing on
> the materialman a duty of inquiry. . . . ***Suppliers of necessaries are
> afforded the protection of a lien even when, because of temporal
> or other limitations, they are unable to ascertain the existence of
> a prohibition of lien clause or check the credit of the buyer.***

*Id.* at 749 (emphasis added).

Under U.S. law, "a presumption arises that one furnishing supplies to a vessel

acquires a maritime lien . . . ." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 605 (5th Cir.

1986). "Because of the strong presumption in favor of a maritime lien, it is necessary that a

party opposing the lien prove that the creditor . . . deliberately intended to look solely to the

owner's personal credit and to forego the valuable privilege afforded it by law." *Id*. at 606.

The U.S. federal courts have consistently held that the supply of bunker fuel

constitutes a supply of "necessaries" to a vessel pursuant to the Lien Act. *See*, *e.g.*, *Bominflot,

Inc. v. The M/V Henrich S*, 465 F.3d 144, 147 (4th Cir. 2006) ("[U]nder U.S. law, a company

supplying a vessel with bunkers has a maritime lien on the vessel."). The Lien Act further

provides that the vessel's owner, master, or charterer, to whom the vessel is entrusted, or their

agent, is presumed to have authority to purchase necessaries on the credit of the vessel. 46

U.S.C. § 31341(a)(1)-(4). Thus, to obtain a maritime lien under U.S. law against the vessel to

which the bunkers were supplied, a bunker supplier must: (1) provide necessaries; (2) to a vessel;

(3) on the order of the owner or person authorized by the owner.  46 U.S.C. § 31342; *see also Triodetic Inc. v. Statue of Liberty IV*, LLC, No. 12 Civ. 6348(KBF), 2013 WL 6017926, at *3 (S.D.N.Y. Nov. 6, 2013) (recognizing same).

The undisputed record demonstrates that USOT satisfies the requirements of the Lien Act, and thus holds maritime liens against the Vessels for the amounts listed on ***USOT's invoices***, plus interest, costs and attorneys' fees.  Indeed, USOT's Marine Fuel Delivery Receipts show that USOT delivered, and the Vessels accepted, bunker fuel at the port of Tacoma, Washington in October 2014.  (Keough Decl., Exs. I, L, O and R)  Accordingly, USOT holds valid maritime liens against the Vessels as a matter of law since the subject bunker fuel was delivered by USOT to the Vessels on the order of a person authorized to bind the Vessels.  46 U.S.C. § 31342; *see also Marine Fuel Supply & Towing Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988) (recognizing that chief engineer's stamp on bunker fuel delivery receipt acknowledging receipt constitutes evidence of authority to bind the vessel); *see also Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty*, 608 F.2d 197, 200 (5th Cir. 1979) (chief officer who ordered services possessed management powers envisioned by the Lien Act, and thus had presumed authority as well as actual authority to incur maritime lien against the Vessel).

**C.  The Restraining Order Ignores the Governing Procedure for Providing Security for *In Rem* Claims in Accordance with the Supplemental Rules.**

The Supplemental Rules govern the procedure for enforcing maritime liens by arresting a vessel and seeking an interlocutory sale of the vessel with the proceeds of such sale constituting security for the claim of the plaintiff who arrested the vessel.  Supplemental Rule E(9) provides in relevant part:

**(a) Interlocutory Sales; Delivery**

 (i) On application of a party, the marshal, or other person having

custody of the property, the court may order all or part of the property sold – ***with the sales proceeds, or as much of them as will satisfy the judgment***, paid into court to await further orders of the court – if:

(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

\*     \*     \*     \*

(ii) In the circumstances described in Rule E(9)(a)(i), the court, on motion by a defendant or person filing a statement of interest or right under Rule C(6), may order that the property, rather than being sold, be delivered to the movant ***upon giving security under these rules.***

(Emphasis added).

Supplemental Rule E(5) governs the procedure for the release of property from arrest upon the giving of security by the property owner.  Supplemental Rule E(5)(b) states in relevant part:

**(b) General Bond.**  The owner of any vessel may file a general bond or stipulation, with sufficient surety, to be approved by the court, conditioned to answer the judgment of such court in all or any actions that may be brought thereafter ***in such court in which the vessel is attached or arrested.***  Thereupon the execution of all such process against such vessel shall be stayed ***so long as the amount secured by such bond or stipulation is at least double the aggregate amount claimed by plaintiffs in all actions begun and pending in which such vessel has been attached or arrested.***

(Emphasis added).

By issuing the Restraining Order and allowing plaintiff to tender a general bond (in insufficient form) into the Court's registry, the Court overlooks that process of an arrest warrant against a vessel may only be stayed pursuant to the Supplemental Rules "so long as the amount secured by such bond . . . is ***at least double the aggregate amount claimed by plaintiffs***

16

*in all actions begun and pending in which such vessel has been attached or arrested.*"
Supplemental Rule E(5)(b) (emphasis added).

First, plaintiff ignores that the instant action is not an action "begun and pending in which such vessel has been attached or arrested," and thus the bond purportedly tendered by plaintiff constitutes insufficient security for USOT's claim against the Vessels as a matter of law. Second, the amount of the purported bond tendered by plaintiff falls well short of the amount required by Supplemental Rule E(5).  Plaintiff has allegedly tendered a bond in the amount listed in OW Germany's invoice for each vessel, "plus an uplift for interest and/or costs, as may be awarded, of 6%."  *See* Dkt. 2-1.  By bringing the instant action for interpleader against these five (5) defendants, plaintiff contends that it might be liable to more than one party for the same delivery of bunker fuel under U.S. maritime law.  Accordingly, at a minimum, plaintiff should be directed to increase the amount of the bond to double the aggregate amount claimed by all plaintiffs in accordance with Supplemental Rule E(5)(b).

**D.  The Restraining Order is Overly Broad and Unsupported.**

The Restraining Order improperly prohibits USOT from pursuing its independent claims *in rem* against the Vessels - - a different *res* than the fund deposited by plaintiff in this action.  Plaintiff sought the Restraining Order pursuant to 28 U.S.C. § 2361, which provides in relevant part:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding *in any State or United States court affecting the property, instrument or obligation involved in the interpleader action* until further order of the court.

28 U.S.C.A. § 2361 (emphasis added).

This Court has previously held that "28 U.S.C. § 2361 permits this Court to enjoin

'proceeding(s) . . . affecting the property . . . involved . . . .'  Any order enjoining the parties from pursuing other causes of action must not be overly broad."  *Wasserman v. Fid. & Deposit Co. of Maryland*, 490 F. Supp. 564, 567 (S.D.N.Y. 1979) (citing 7 Wright and Miller, *Federal Practice and Procedure* § 1717 at 466-67).  The fund deposited by the stakeholder defines the subject matter of an interpleader action.  *Id.*  Thus, "the injunction can only extend to litigation involving the fund that is the subject matter of the interpleader."  *Id.* (quoting 7 Wright and Miller, *Federal Practice and Procedure* § 1717 at 467).  "The fact that (plaintiff) properly invoked the interpleader jurisdiction under § 1335 (does) not, however, entitle it to an order . . . enjoining prosecution of suits against it outside the confines of the interpleader proceeding . . . ."  *Id.* (quoting *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523 (1967)) (parenthesis in original).

In *Wasserman*, this Court declined to enjoin prosecution of claims against a bank for alleged breach of fiduciary duty and negligence pending in state court, where such claims were independent of claims by other defendants to an interpleaded fund, and where it was "clearly possible that an obligation [was] owed by [the bank] . . . ***separate and apart from the fund.***"  *Id.* (Emphasis added).

In the instant case, for the reasons discussed above, USOT has asserted in the first-filed actions separate and independent claims *in rem* against the Vessels - - a separate and distinct *res* from the one deposited in the Court.  (Keough Decl., Exs. A-B)  Indeed, plaintiff has failed to place the Vessels in the custody of the Court.  Nor has plaintiff named the Vessels as parties *in rem*.  Moreover, plaintiff offers no support for its allegation that the Court is authorized to enjoin the arrest of the Vessels on an *ex parte* application pursuant to 28 U.S.C. § 2361 where, as here, the Vessels are not the *res* within the Court's custody.  The cases plaintiff relies on for

support address neither a vessel *in rem* nor maritime liens.  Dkt. 3 at 4-5.[4]

In the related case before the Court styled, *Birch Shipping Ltd. v. O.W. Bunker China Ltd. (HK), et al.*, 14-CV-9282(VEC), Judge Castel modified a similar restraining order to allow defendant Chemoil, "to commence and in rem action to endeavor to serve maritime process on the Vessel, including process to arrest the Vessel."  (Keough Decl., Ex. G at ¶ 1)  In so ordering, Judge Castel recognized Chemoil's statutory right to enforce its maritime lien against the vessel M/V BIRCH 6 by commencing an action against that vessel *in rem* and to serve maritime process against the vessel.  The court also ordered that the amount deposited by plaintiff Birch Shipping may be taken in account in setting any security or bond requirement pursuant to Rule E(5) of the Supplemental Rules.  (*Id*. at ¶ 2)  The Court should follow the reasoning of Judge Castel and vacate or modify the Restraining Order to allow USOT to arrest the Vessels.

In addition, the Restraining Order is overbroad to the extent that it purports to enjoin foreign proceedings.  First, the international scope of the Restraining Order exceeds the geographical scope permitted by the express language of 28 U.S.C. § 2361.  Moreover, even if 28 U.S.C. § 2361 did permit an anti-suit injunction against foreign proceedings, the Second Circuit has cautioned that "due regard for principles of international comity and reciprocity require a delicate touch in the issuance of anti-foreign suit injunctions" and that "such injunctions should be used sparingly." *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 65 (2d Cir. 2007).  Accordingly, the Second Circuit applies a multi-factor test to determine

---

[4] *See, e.g., Bank of Am., N.A. v. Morgan Stanley & Co.*, 10 Civ. 6322 (RJH), 2011 U.S. Dist. LEXIS 68157 *3-4 (S.D.N.Y. June 24, 2011) (concerning distribution of liquidation proceeds); *U.S. v. Major Oil Corp.*, 583 F.2d 1152, 1154 (10th Cir. 2010) (concerning interpleaded proceeds from sale of a refinery and a tax refund); *Sotheby's, Inc. v. Garcia*, 802 F.Supp. 1058, 1061-62 (S.D.N.Y. 1992) (concerning right to possession of paintings); *Star Ins. Co. v. Cedar Valley Express, LLC*, 273 F.Supp.2d 38, 40 (D.D.C. 2002).

whether to issue an anti-suit injunction.[5]  In seeking a worldwide injunction, plaintiff has neither alleged nor made the required showing for a foreign anti-suit injunction under the rule in the *M/T Beffen*.

In sum, the Restraining Order impermissibly prohibits USOT from prosecuting its independent *in rem* claim against the Vessels - - a separate and distinct *res* from the funds plaintiff deposited into the Court's registry, which are the subject of this action.  The Restraining Order should thus be vacated or modified to allow USOT to enforce its valid *in rem* claims against the Vessels and to seek their arrest.

**E.  Plaintiff Fails to Show That it is Entitled to Injunctive Relief.**

Plaintiff fails to show that it is entitled to an *ex parte* injunction prohibiting USOT from pursuing its lawful rights against the Vessels.  Plaintiff makes no showing that multiple claimants exist for an *in rem* claim against any vessel, and thus there is no basis for any interpleader here.  Indeed, no claim is shown by any party other than USOT.  Moreover, although Rule 65 of the Federal Rules of Civil Procedure does not apply by its own force to restraining orders under 28 U.S.C. § 2361, this Court has applied the traditional preliminary injunction analysis to determine whether such a restraining order was obtained properly.  *Mark E. Mitchell, Inc. v. Charleston Library Soc.*, 114 F.Supp.2d 259, 261 (S.D.N.Y. 2000).   In *Mitchell*, this Court analyzed whether the stakeholder seeking a restraining order under 28 U.S.C. § 2361 had shown (1) a threat of irreparable injury; and (2) either (a) a likelihood of success on the merits, or (b) the existence of serious questions for litigation and that the balance

---

[5] An anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined.  *Id.* at 64 (citations omitted).  If this threshold is met, other factors courts must consider include (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's *in rem* or *quasi in rem* jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.  *Id.*  (citations omitted).

of hardships tipped **decidedly** in its favor.  *Id.* (emphasis added).

First, plaintiff has failed to show that it will suffer irreparable harm if the Restraining Order is vacated.  Plaintiff alleges that "one or more of the defendants has indicated their intent to file actions against HLAG or more importantly the Vessels to seek to recover payment for the bunkers."  Dkt. 3 at 7.  In so alleging, plaintiff ignores that it can avoid any arrest of the Vessels through the common practice of providing security in the form of a letter of undertaking from the P&I Club that insures the Vessels.  *See* 8 MATTHEW BENDER, BENEDICT ON ADMIRALTY § 7.02[C] (7th ed. 2008).  Such letters make the issuer responsible for payment of the relevant claim, and are commonly used in commercial shipping disputes.  *Id.*; *see, e.g.*, *Pilot Enterprises, Inc. v. Brodosplit Inc.*, 391 Fed.Appx. 923, 924 (2d Cir. 2010) (P&I Club issued letter of undertaking to Citgo on behalf of vessel owner in consideration for Citgo's promise to refrain from arresting the insured vessel).

In fact, plaintiff's counsel and USOT's counsel agreed that USOT would accept letters of undertaking for the balance of USOT's claims against the M/V SOFIA EXPRESS, M/V SANTA ROBERTA and M/V SEASPAN HAMBURG, on the same terms as the LOU for USOT's claim against the M/V VIENNA EXPRESS, in exchange for USOT's promise not to arrest the Vessels to enforce its maritime liens.  (Keough Decl., at ¶ 4)  By commencing the instant action, plaintiff's counsel has breached that agreement.  Moreover, HLAG and its P&I Club have breached the express terms of the LOU for USOT's claim against the M/V VIENNA EXPRESS by (1) failing to file or cause to be filed an appearance and claim of owner on behalf of the M/V VIENNA EXPRESS in the first-filed action in U.S. District Court for the Western District of Washington, "which Court shall have exclusive in rem jurisdiction and venue over the Claim[.]"  (*Id*. at Ex. F at ¶ 2); and (2) failing "to cause to be provided, no later than December

10, 2014, security in the form of an underwriter's surety bond, issued in a form and by a surety **subject to USOT's approval . . . in the total sum of $1,725,000 in favor of [USOT], or some other form of security agreeable to USOT . . . .**" (*Id.*) (Emphasis added).  In breaching the LOU and its agreement to provide security in the form of letters of undertaking for the balance of USOT's claims against the Vessels, plaintiff improperly seeks equitable relief from this Court with unclean hands.  *See Holm v. First Unum Life Ins. Co.*, 7 F.App'x. 40, 41 (2d Cir. 2001) ("The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith to the matter in which he seeks relief.'" (quoting *Precision Instrument Mfg. Co. v. Automotice Maint. Mach. Co.*, 324 U.S. 806 (1945)); *see also Am.-Hawaiian Steamship Co. v. Bowring & Co.*, 150 F. Supp. 449, 453 (S.D.N.Y. 1957) ("The Federal Interpleader Act did not change the equitable nature of interpleader.  It merely extended the jurisdiction of the Federal Courts to cover the circumstances which it describes.").

Nor does plaintiff show that the balance of the hardships "tip[s] decidedly" in plaintiff's favor.  On the other hand, the Restraining Order imposes severe hardship on USOT.  If the Restraining Order remains in place in its present form, USOT is prohibited from protecting or enforcing its valid, statutory maritime liens against the Vessels *in rem* before the Vessels depart from the jurisdiction of the U.S. District Court in Washington and California.  Moreover, the Vessels may not return to the United States in the foreseeable future now that plaintiff has filed the instant case.  Therefore, time is of the essence if USOT is to have any opportunity to pursue its independent and valid statutory *in rem* claims against the Vessels.

## F.  The Restraining Order Deprives USOT of its Property Without Due Process of Law.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. Art V.  For the reasons

discussed above, USOT has a statutory right to enforce its maritime lien by arresting the Vessels *in rem*.  A lien constitutes a property right.  *In re Olivas*, 129 B.R. 122, 125 (Bankr. W.D. Tex. 1991).  The Restraining Order deprives USOT of this right by prohibiting it from enforcing its valid maritime liens against the Vessel.

The Restraining Order states that USOT "was given notice of this application, through notifying an attorney . . . that represents USOT but chose not to appear to answer whether the requested emergency relief should be entered."  Dkt. 5 at 1.  However, USOT was not given proper notice of any hearing.  On the contrary, on December 18, 2014, USOT's counsel appeared at a status conference before the Court on behalf of another client in a related case.  (Keough Decl., at ¶ 8)  The Court's Order in that case dated December 11, 2014, states in relevant part: "By appearing before the Court for this conference, counsel will not waive any defenses their clients may have as to jurisdiction or otherwise." (*Id*. at Ex. T)  USOT's counsel received an email from HLAG's counsel less than an hour before the "without prejudice" status conference before the Court in the related case.  The email by USOT's counsel informed USOT's counsel that HLAG had filed the instant case "for interpleader and declaratory judgment relief with respect to the U.S. Oil claims." (*Id*. at Ex. U)  USOT was not served with copies of plaintiff's initial pleadings.  Nor was USOT's counsel authorized to accept service on behalf of USOT at the December 18 conference before the Court.  (Keough Decl., at ¶ 8)[6]

In addition, plaintiff failed to comply with the service requirement of 28 U.S.C. § 2361, which provides that the Restraining Order "shall . . . be served by the United States marshals for the respective districts where the claimants reside or may be found."  Instead,

---

[6] Accordingly, counsel for USOT did not choose "not to appear to answer whether the emergency relief should be granted."  Dkt. 5 at 1.  As of December 18, USOT had not retained counsel to protect its interest in respect to the instant case, and thus any appearance by USOT's counsel at the December 18 hearing on plaintiff's *ex parte* application would have been improper.

plaintiff's proof of service shows that the summons, complaint and Restraining Order were served on "Amy McLaren of The Corporation Trust Company" by an employee of a law firm located in Delaware.  *See* Dkt. 6.  Accordingly, it is undisputed that the Restraining Order was neither issued nor properly served before the U.S. District Courts in California and Washington issued warrants for the arrest of the Vessels.

The Vessels will depart the jurisdiction of the U.S. District Courts in Washington and California within a day or so, and USOT will have been deprived of its statutory right to enforce its *in rem* maritime liens without effective recourse.

While the procedural safeguards provided by Rule 65 of the Federal Rules of Civil Procedure do not apply of their own force to restraining orders issued pursuant to 28 U.S.C. § 2361, and it may sometimes be appropriate to dispense with notice and hearing in the first instance, "these aspects of the procedure should not be eliminated when there is reason to believe that they are necessary to protect the interests of one or more of the claimants and to reach a sound conclusion as to the desirability of an injunction."  7 Wright and Miller, *Federal Practice and Procedure* § 1717 (3d ed.) (citing *Prudential Ins. Co. of Am. v. Shawver*, 208 F. Supp. 464 (W.D. Mo. 1962)).  "While Rule 65 is not applicable to statutory interpleader actions . . . it embodies principles of equity practice which should be given consideration in issuing restraining orders under Section 2361 in interpleader actions, as the circumstances and the time and space considerations of the statutory interpleader action permit."  *Prudential*, 208 F.Supp. at 470.  In the instant case, if the Restraining Order is not vacated or modified to permit the arrest of the Vessels before they depart the jurisdiction U.S. courts, USOT will have been deprived of its valid maritime lien rights without being provided an effective opportunity to protect its interests.

24

**G.  This Court Constitutes an Improper Venue for this Action.**

Plaintiff has failed to plead sufficient facts to justify bringing the Interpleader action in this venue.  Under 28 U.S.C. § 1397, "[a]ny civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside."  28 U.S.C.A. § 1397.  Plaintiff does not allege that any of the claimants in this action reside in this District.  *See* Complaint at ¶¶ 2-6.  Accordingly, this Court constitutes an improper venue to determine any rights to the funds deposited into the Court's registry as a matter of law.  28 U.S.C. § 1397; *see Osis v. 1993 GF P'ship, L.P.,* No. 3:99-CV-0797(AVC), 2000 WL 840050, at *5 (D. Conn. Mar. 31, 2000) (venue held improper under 28 U.S.C. § 1397 where none of the defendants resided in the district and where, as here, the defendants included both aliens and non-aliens).

## CONCLUSION

USOT respectfully requests that this Court (1) enter an order to show cause why the Court's Restraining Order dated December 19, 2014, should not be vacated or modified on an emergency basis to allow USOT to enforce its maritime liens against the Vessels, *in rem*; (2) order the plaintiff to direct that the Vessels remain at the U.S. ports where they are now located and remain there until further order of the Court after a hearing on the order to show cause; and (3) provide USOT with such other, further and different relief as the Court may deem just and proper in the premises.

Dated: New York, New York
        December 22, 2014

                                  CLYDE & CO US LLP

                                  By:  John R. Keough, III
                                       John R. Keough, III
                                       Casey D. Burlage
                                       Corey R. Greenwald

25

George G. Cornell
405 Lexington Avenue, 16th Floor
New York, New York 10174
<u>Tel.</u>:  (212) 710-3900
<u>Fax</u>: (212) 710-3950

*Attorneys for Defendant*
*U.S. Oil Trading LLC*