UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAPAG-LLOYD AKTIENGESELLSCHAFT, | |
| Plaintiff, | **14 Civ. 9949 (VEC)** |
| -against- | |
| U.S. OIL TRADING LLC, O.W. BUNKER GERMANY GMBH, O.W. BUNKER & TRADING A/S, O.W. BUNKER USA, INC., ING BANK N.V., CRÉDIT AGRICOLE CIB, | |
| Defendants. | |
| U.S. OIL TRADING LLC, | |
| Plaintiff, | **15-cv-6718 (VEC)** |
| -against- | |
| M/V VIENNA EXPRESS, her tackle, boilers, apparel, furniture, engines, appurtenances, etc., *in rem;* M/V SOFIA EXPRESS, her tackle, boilers, apparel, furniture, engines, appurtenances, etc., *in rem*, | |
| Defendants | |

## HAPAG'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR DISCHARGE FROM LIABILITY,
## DISMISSAL WITH PREJUDICE, AND AWARD OF FEES AND COSTS

Michael Fernandez
Gina M. Venezia
Michael J. Dehart
80 Pine Street
New York, NY  10005
(212) 425-1900 / (212) 425-1901 (Fax)
*Attorneys for Third-Party Plaintiff*
*Hapag-Lloyd Aktiengesellschaft*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    I.    FACTUAL BACKGROUND ................................................................................ 2

    II.   PROCEDURAL BACKGROUND ....................................................................... 3

        A.  Civil Action 14-cv-9949 ("9949" or "Action 9949") ......................................... 4

        B.  Civil Action 15-cv-6718, the "Vienna Express Action" ..................................... 6

LEGAL DISCUSSION .......................................................................................................... 8

    I.    HAPAG AND ITS VESSELS ARE ENTITLED TO A DISCHARGE. ......................................... 8

        A.  Hapag has Satisfied the Requirements to be Discharged ....................................... 8

        B.  The Counterclaims of OW Germany and ING Do Not Prevent Discharge. ......... 11

    II.  HAPAG IS ENTITLED TO AN AWARD OF ITS LEGAL FEES AND COSTS. ........................... 14

CONCLUSION ....................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*A/S Kredit Pank v. Chase Manhattan Bank*,
303 F.2d 648 (2d Cir. 1962) ...............................................................................16

*Advantage Title Agency, Inc. v. Rosen*,
297 F. Supp. 2d 536 (E.D.N.Y. 2003) ...................................................................9

*Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140 (2d Cir. 1988)........................................9

*Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905 (2d Cir. 2010) .......................................8, 12

*Bankers Trust Co. of West N.Y. v. Crawford*, 559 F.Supp. 1359 (W.D.N.Y. 1983).....................10

*Banner Life Ins. Co. v. Lukacin*, 13-cv-6589, 2014 U.S. Dist. LEXIS 134675
(D. N.J. Sept. 22, 2014) ......................................................................................15

*Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, 06-cv-5466,
2007 U.S. Dist. LEXIS 2709 (S.D.N.Y. Jan. 11, 2007) ...............................9, 10, 11

*Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, 06-cv-5466,
2015 U.S. Dist. Lexis 137767 (S.D.N.Y. Sept. 25, 2015).................................13, 14

*Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173 (S.D.N.Y. 2002) ..................9

*Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310 (S.D.N.Y. 2014) .....................................9

*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016) ..... *passim*

*Lutheran Brotherhood v. Comyne,* 216 F. Supp. 2d 859 (E.D. Wis. 2002)...................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 98-cv-1756,
2001 U.S. Dist. LEXIS 25 (S.D.N.Y. Jan. 4, 2001) ...............................11, 12, 15, 16

*Metro. Life Ins. Co. v. Yitao Sun*, No. 12 C 6036, 2013 U.S. Dist. LEXIS 125729
(N.D. Ill. Sept. 4, 2013) ......................................................................................12

*Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397 (E.D.N.Y. 2013) ...........................9

*Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258 (3d Cir. 2009) .........................................12, 13

*Reliance Std. Life Ins. Co. v. Winiarski*, No. 2:12-cv-123,
2012 U.S. Dist. LEXIS 61922 (W.D. Pa. May 3, 2012)......................................12

*Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir. 1962) ....16

*Septembertide Pub. B.V. v. Stein and Day, Inc.*, 884 F.2d 675 (2d Cir. 1989)............................15

*State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523 (1967) ...............................................8, 9

*U.S. Trust Co. v. Alpert*, 10 F. Supp. 2d 290 (S.D.N.Y. 1998) ......................................................12

*UPT Pool Ltd. v. Dynamic Oil Trading (Sing.) Pte. Ltd.,* 14-cv-9262, 2015 AMC 2070, 2015 U.S. Dist. LEXIS 85950 (S.D.N.Y. July 1, 2015)...................................................4, 5, 10

*Wells Fargo Bank N.V. v. ESM Fund I, LP*, 785 F. Supp. 2d 188 (S.D.N.Y. 2011) .....................14

## Statutes & Other Authorities

28 U.S.C. §1335............................................................................................................. 4, 5, 9, 10

28 U.S.C. §2361.......................................................................................................................... 4, 9

7 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed. 2001) .............. 15

## INTRODUCTION

Hapag-Lloyd Aktiengesellschaft ("Hapag"), the interpleader plaintiff,[1] submits this memorandum in support of its motion for an order discharging it and its vessels, the M/Vs SANTA ROBERTA, SEASPAN HAMBURG, SOFIA EXPRESS and VIENNA EXPRESS (the "Vessels"), from liability to Defendants/Claimants arising out of or relating to the subject marine fuel (i.e., bunker) deliveries to the Vessels and awarding Hapag attorneys fees and costs incurred in having to institute and conduct these proceedings.

## SUMMARY OF ARGUMENT

The competing claims presented in these interpleader proceedings "concern the same enrichment to Hapag-Lloyd —i.e., the value of the bunkers, payment for which is the entitlement claimed by all parties." *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 151 (2d Cir. 2016). As the Second Circuit has already explained, "nothing could be more palpably unjust than to permit two recoveries against [Hapag] for the same enrichment." *Id.* Accordingly, use of the interpleader remedy has been determined to be entirely appropriate to resolve all claims arising out of the subject bunker supplies, whether such claims are pursued as lien or contract claims. Hapag, therefore, is entitled to be discharged from all liability upon the posting of interpleader funds or security. As Hapag has already done so in the main action, 99-cv-9940, and is willing to do so in the case of the Vienna Express Action in exchange for the security it has already provided, discharge is appropriate at this stage of the proceedings.

---

[1] Hapag is the named plaintiff in 14-cv-9949 which was commenced as an interpleader proceeding. Hapag is the counter-claimant and third-party plaintiff in 15-cv-6718 which was commenced as a vessel arrest action by USOT and in which Hapag commenced interpleader proceedings by way of counterclaim and third-party practice.

# BACKGROUND

## I.   FACTUAL BACKGROUND

The two captioned cases are two of many pending in this Court as related interpleader actions involving claims against vessel owners or operators and their vessels for payment for bunker deliveries made shortly before the November 2014 collapse of the O.W. Bunker Group, a well-known network of global traders and physical suppliers. While the Court is familiar with the parties involved in these two cases and the facts leading to these proceedings, a brief summary is provided to place this submission in context.

Hapag is vessel owner and/or operator of many vessels, including the four Vessels involved in these two cases. (Dkt. 84 ¶ 16). As owner/operator, Hapag contracted with O.W. Bunker Germany GmbH ("OW Germany") for the purchase and delivery of bunkers to Hapag vessels in the U.S. and elsewhere. (Hapag Tr. 26:16-:22). During 2014, Hapag placed orders with OW Germany for bunker deliveries to be made to the Vessels at Tacoma, Washington, which orders were subject to Hapag's standard bunker terms. (Hapag Tr. 23:15-:20, 61:24-:25, 62:2-:6).

OW Germany was the Germany-based company within the OW Bunker Group, and the only entity with whom Hapag contracted and dealt for the bunker supplies at issue. (Hapag Tr. 135:10-:18). To perform its contractual obligations to Hapag, OW Germany entered a downstream sale with O.W. Bunker USA, Inc. ("OW USA"). OW USA then contracted USOT to provide the actual bunker deliveries at Tacoma. (USOT Tr. 71:24-:25, 72:-:4). USOT had a long-standing relationship with O.W. Bunker & Trading A/S ("OW Denmark"), had extended it credit, and considered that entity its customer and the one responsible for payment of its

invoices, although OW USA was the entity that had contacted USOT. (USOT Tr. 29:5-:15, 71:24-:25, 72:2-:4).

The bunkers were delivered to the Vessels in October 2014. (Dkt. 84 ¶¶ 20, 23, 26, 30). In accordance with the established course of business, OW Germany then invoiced Hapag for the bunkers. (Dkt. 84 ¶¶ 21, 24, 27, 31). USOT invoiced its contracting partner, OW Denmark. (USOT Tr. 38:6-:13). About one month after the deliveries, the OW entities filed for bankruptcy protection.

Following the demise of OW, Hapag received demands for payment from OW Germany and from USOT and threats of arrest of the Vessels, including demands based on purported maritime lien rights and on purported contractual rights. (Dkt. 84 ¶¶ 34, 40, 48). ING Bank N.V. ("ING") also surfaced. ING was not involved in any of the underlying transactions. It is a large commercial bank that serves as security agent for a syndicate of lenders (of which ING is one) to the OW Bunker Group. (Dkt. 98 ¶ 40). The lenders agreed in December 2013 to provide OW a credit facility of $700 million, of which $647 million had been expended as of November 4, 2014, and of which approximately $425 million has been recovered since OW's demise. (ING Tr. 82:25, 83:2-:4, 137:16-:23). ING asserts that it is OW Germany's assignee — a point contested by OW Germany— as a result of the terms of the credit facility, and thus, ING asserts, it is entitled to pursue payment from Hapag on both lien and contract theories.

## II.   PROCEDURAL BACKGROUND

Following the collapse of the OW entities, Hapag found itself in a difficult situation. It was willing to pay for the bunkers,[2] but multiple entities claimed entitlement to the payment for

---

[2] In fact, Hapag had paid OW Germany's invoice for the SANTA ROBERTA (*see* Dkt. 84, First Amended Complaint ¶ 32). OW Germany did not confirm its receipt of that payment until 2016 in the context of these proceedings, and it never transmitted payment down the line of contracts. Hence USOT was never paid and appears to be the only party with a remaining claim for payment on this vessel, a claim which it is pursuing under a maritime

the exact same supply of bunkers and threatened to seize the Vessels in the U.S. unless the payment was made to them only. "To avoid a 'Sophie's Choice' between, on the one hand, having their Vessels arrested or, on the other hand, being forced to pay or post bonds to secure double or triple the amounts for which they originally contracted,"[3] Hapag took advantage of the interpleader remedy available under U.S. law. The procedural background with respect to the two captioned cases is as follows:

### A.  Civil Action 14-cv-9949 ("9949" or "Action 9949")

Hapag commenced Action 9949 in December 2014 as an interpleader proceeding pursuant to 28 U.S.C. §1335 to resolve multiple demands for payment and threats of arrest of the M/Vs SEASPAN HAMBURG, SOFIA EXPRESS, and SANTA ROBERTA.[4] In conjunction with Hapag's deposit of a bond "reflecting the full invoiced amount for the applicable fuel bunkers plus interest" (Dkt. 217 at 2),[5] the Court accepted that it had interpleader jurisdiction and issued an injunction pursuant to 28 U.S.C. §2361. The injunction order stated, *inter alia*, that:

> [Hapag] has established the procedural prerequisites of 28 U.S.C. § 1335 and the
> Court finds that the bond tendered by [Hapag] is sufficient in amount and form for

---

lien theory. However, OW Germany and ING have not yet formally disclaimed any interest with respect to the payment obligation on this vessel or dismissed the claims they have asserted in 9949 on this vessel.

[3] *UPT Pool Ltd. v. Dynamic Oil Trading (Sing.) Pte. Ltd.,* 14-cv-9262 (VEC), 2015 AMC 2070, 2015 U.S. Dist. LEXIS 85950, *24-25 (S.D.N.Y. July 1, 2015), *aff'd in part, remanded in part, Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC,* 814 F.3d 146 (2d Cir. 2016).

[4] Hapag's complaint also included claims related to the M/V VIENNA EXPRESS, but because Hapag had already provided security to USOT (discussed below), the Court was reluctant to grant interpleader relief with respect to that vessel without further input from the claimants. The claims related to the VIENNA EXPRESS subsequently became the subject of 15-cv-6718, the vessel arrest action filed by USOT in Washington and subsequently transferred to this Court, discussed below.

[5] Hapag posted bond in the following amounts with respect to each vessel: $1,607,818.41 (M/V Seaspan Hamburg); $1,397,788.33 (M/V Sofia Express); and $1,507,771.89 (M/V Santa Roberta). (Dkt. 9). These amounts exceed the costs for the fuel bunkers invoiced to the various parties and have been affirmed by the Second Circuit as appropriate security in this case. *See Hapag-Lloyd,* 814 F.3d 146, 153 n. 19. The security for each vessel has also been increased by an additional 6% to comply with the Court's order requiring an additional deposit on the year anniversary of this case. (Dkt. 130, Court order, & Dkt. 154, reflecting additional deposit).

purposes of § 1335 and for securing the competing claims for the payment of the marine bunkers at issue.

(Dkt. 5 at 2).  The Court also requested additional briefing from the parties in this and the related interpleader cases on the propriety of the exercise of interpleader jurisdiction. (Dkt. 8).

In January 2015 (prior to the additional briefing requested by the Court), USOT appealed the Court's exercise of jurisdiction and injunction order. (Dkt. 28). In July 2015, the Court held that it had jurisdiction in this and the related interpleader actions over the in rem and in personam contract claims and that the posted security was sufficient for all claims. (Dkt. 80). The Court explained:

> Although the Fuel Suppliers argue that their in rem claims against the Vessels must be "secure" in order for the Court to have subject matter jurisdiction under 28 U.S.C. 1335, there is no such [sic] requirement under this statute.  Section 1335 only requires that the interpleading party pay "the amount due under such obligation into the registry of the court, there to abide the judgment of the court" or give "a bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." 28 U.S.C. 1335(a)(2). The Vessel Interests either deposited funds or posted bonds measured by the amount of their "obligations" under the fuel supply contracts. That is sufficient to satisfy the requirements of Section 1335.

*UPT Pool Ltd,* 2015 U.S. Dist. LEXIS 85950, at *36 n. 8.

In February 2016, the Second Circuit decided USOT's appeal, affirming the Court's exercise of jurisdiction in Action 9949 over both the in rem and in personam contract claims and the Court's issuance of the injunction. The Second Circuit found, among other things, that the use of interpleader was appropriate for all claims, regardless of the theory pursued, arising out of the bunker supplies and that the bond posted by Hapag was appropriate security for all claims. The Second Circuit, however, remanded for consideration of the sole issue of whether the foreign aspects of the injunction should be maintained. *See Hapag-Lloyd*, 814 F.3d 146. On May

6, 2016, the Court issued an order on the remanded issue, maintaining the foreign scope of the injunction. (Dkt. 217).

Meanwhile, in July 2015, Hapag amended its complaint because it had learned of the involvement of OW USA in the bunker transactions and desired to name it as a potential claimant too, along with USOT, OW Germany and ING. (Dkt. 84). Each of USOT, OW Germany and ING appeared in the action, answered the amended complaint, and claimed to be entitled to receive payment for the bunkers. (Dkt. 100, 93, 98). Additionally, OW Germany and ING asserted counterclaims against Hapag for breach of contract for not remitting payment directly to them (Dkt. 83, 98), with ING also asserting a crossclaim against USOT (Dkt. 98). The remaining potential claimants — OW Denmark, OW USA and Credit Agricole —disclaimed any interest in the transactions at issue and were dismissed from the case. (Dkt. 163, 157, 165, 115).

Extensive document and deposition discovery was conducted over several months in 2015 through 2016. In January 2016, OW Germany sought to have the case referred to the bankruptcy court, which effort was opposed by Hapag and USOT. (Dkt. 159, 169, 174). In April 2016, the Court granted OW Germany's application to confirm the reference and simultaneously granted Hapag's and USOT's request to withdraw the reference. (Dkt. 215). The case thus remains entirely before this Court, and on April 6, 2016, it was selected to be a "'test' case for the purpose of briefing summary judgment and discharge motions in the related interpleader actions." (Dkt. 207).

**B.  Civil Action 15-cv-6718, the "Vienna Express Action."**

The Vienna Express Action stands in a slightly different procedural posture than Action 9949 because it was not initiated as an interpleader proceeding, but the substantive issues presented in both cases are the same and it does, in fact, involve an interpleader. The Vienna

Express Action was instituted in Washington by Claimant USOT as a vessel arrest action in which the VIENNA EXPRESS was named the defendant. (Vienna Express Dkt., "VE Dkt.", 1). Prior to the filing, and to avoid an actual restraint of the vessel, Hapag through its underwriter issued a without prejudice Letter of Undertaking ("LOU") which secured USOT's claim and under which Hapag agreed to appear in any arrest action commenced by USOT. (VE Dkt. 23, Ex. 3). Hapag accordingly appeared in the case as a claimant to the in rem defendant (i.e., the vessel) and answered the complaint. (VE Dkt. 23).

With its answer, Hapag also commenced interpleader proceedings by way of a counterclaim and third party complaint, naming USOT, OW Germany, and ING, among others, as potential claimants to the payment obligation flowing from the single supply of bunkers to the VIENNA EXPRESS.  (VE Dkt. 23).[6] While Hapag did not post additional interpleader security, Hapag made clear that it was willing to substitute the LOU with security that would fully secure USOT's claim and the claims of all other interested parties. (VE Dkt. 23 at ¶33). (Thus far, none of the parties to the case have demanded such a substitution, but Hapag remains willing to post such interpleader security as a substitute for the LOU.)

USOT, ING, and OW Germany each responded to the interpleader proceedings, claiming to be the party entitled to receive payment from Hapag and the party holding a maritime lien against the vessel. (*See* VE Dkt. 24, 53, & 91). OW Germany and ING also asserted counterclaims. OW Germany counterclaimed against Hapag, alleging that it breached its agreement by not remitting payment directly to OW Germany.  (*See* VE Dkt 53 at ¶¶ 54-72).

---

[6] Hapag also named as potential claimants OW Denmark, OW USA, and Credit Agricole. (*See* Dkt. 23). Credit Agricole and OW Denmark have disclaimed any interest in the matters involved and have been dismissed from the litigation (VE Dkt. 88, 127). OW USA never appeared in the Vienna Express Action, but in accordance with its confirmed bankruptcy plan, it has disclaimed any interest in the matters involved with the VIENNA EXPRESS. *See, e.g.*, Bankruptcy Plan, Dkt. 1171, Art. V(5)(d)-(e) in *In re O.W. Bunker Holding North America Inc.*, Case No. 14-51720 (JAM) (D. Conn. Bankr.).

ING counterclaimed against Hapag and USOT, alleging that payment for the bunkers is to be made to ING as OW Germany's assignee and that Hapag had breached its agreement by not remitting payment directly to ING as assignee. (*See* VE Dkt. 91, Counterclaim at ¶¶6-21).

In addition to filing an answer, OW Germany moved to transfer the case from Washington to this Court. (VE Dkt. 43). By order dated August 7, 2015, the Washington court granted OW Germany's application, and the case was transferred to this Court and accepted as related to Action 9949. (VE Dkt. 72, 76).[7] The Vienna Express Action, although initiated in a different manner, thus stands in essentially the same posture as Action 9949 and proceeded along the same track as 9949 as of August 2015. Accordingly, as in Action 9949, discovery was conducted in earnest[8], OW Germany attempted to have the case transferred to the bankruptcy court, and the case was selected as a test case with USOT expected to move again for summary judgment on its lien claim and Hapag seeking to be discharged.

## LEGAL DISCUSSION

### I.   HAPAG AND ITS VESSELS ARE ENTITLED TO A DISCHARGE.

#### A.  Hapag has Satisfied the Requirements to be Discharged.

The interpleader remedy is "rooted in equity" and is designed to protect the interpleader plaintiff from a "real or reasonable fear of double liability or vexatious, conflicting claims." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533 (1967); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). The interpleader device is remedial and is to be liberally construed, "particularly to prevent races to judgment and the unfairness of multiple

---

[7] Before discovery was conducted, USOT had moved in Washington for summary judgment on its lien claim. (VE Dkt. 37-39). Following transfer, this Court denied USOT's motion in September 2015 without prejudice to renewal upon the completion of discovery. (Dkt. 94).

[8] ING and OW Germany were heavily involved in discovery. (*See, e.g.*, VE Dkt. 107, 108, 110, correspondence regarding ING's and OWG's notices of deposition served on USOT).

and potentially conflicting obligations." *Tashire*, 386 U.S. at 533; *Hapag-Lloyd*, 814 F.3d at 151 (2d Cir 2016).

The typical interpleader action proceeds in two distinct stages. *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988). The district court first determines whether the interpleader action is appropriate; second the court determines the rights of the competing claimants to the fund or security. *See Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 415 (E.D.N.Y. 2013); *Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, 06-cv-5466, 2007 U.S. Dist. LEXIS 2709 (S.D.N.Y. Jan. 11, 2007); *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (citing *Avant Petroleum*, 853 F.2d at 143).

Additionally, when a court determines in the first stage that interpleader is appropriate, the court may also discharge the interpleader plaintiff from further liability and enter a permanent injunction against claims being pursued outside the interpleader proceeding. 28 U.S.C. §2361; *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 317-18 (S.D.N.Y. 2014); *Citigroup*, 2007 U.S. Dist. LEXIS 2709, at *23-27; *Advantage Title Agency, Inc. v. Rosen*, 297 F. Supp. 2d 536, 539 (E.D.N.Y. 2003); *Bank of China*, 192 F. Supp. 2d at 182-83. The district court's authority stems, in part, from 28 U.S.C. §2361, which provides that the district court sitting in interpleader "shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."

To obtain a discharge and permanent injunction, the plaintiff has to demonstrate its compliance with the requirements of 28 U.S.C. §1335, or alternatively, the discharge order can be conditioned on the plaintiff's compliance with those requirements. *See*, *e.g.*, *Citigroup*, 2007

U.S. Dist. LEXIS 2709 (discharging Citibank from liability on condition that it deposits the property with the court in accordance with consent judgment or other court order). Courts will not, however, discharge an interpleader plaintiff who is not disinterested — that is, where the plaintiff has some claim to the property at issue in the interpleader. *Citigroup*, 2007 U.S. Dist. LEXIS 2709, at *23-24; *Bankers Trust Co. of West N.Y. v. Crawford*, 559 F.Supp. 1359, 1365 (W.D.N.Y. 1983).

In Action 9949, the first stage of interpleader has concluded. The Court determined in July 2015 that interpleader was properly invoked in the related interpleader cases with respect to the in rem lien and in personam contract claims for payment. *UPT Pool*, 2015 U.S. Dist. LEXIS 85950, 2015 AMC 2070. The Second Circuit affirmed that determination in February 2016 specifically in regards to Action 9949. *See Hapag-Lloyd*, 814 F.3d 146.  As the Second Circuit explained,

> Though this matter presents a novel factual situation, we think the case before us fits squarely within the language and purpose of the interpleader statute. …
>
> We conclude that the claims alleged in this action concern the same enrichment to Hapag-Lloyd —*i.e.*, the value of the bunkers, payment for which is the entitlement claimed by all parties—and are thus likewise "inextricably interrelated." Although the claims may have different legal origins, we have previously held that there is no requirement that interpleader claims arise "out of a common source of right or entitlement." ….
>
> Adjudication of Hapag-Lloyd's obligation to pay for the fuel bunkers involves inextricably intertwined claims, and interpleader jurisdiction is proper under the broad and remedial nature of §1335.

814 F.3d at 151-53 (internal citations omitted). The Second Circuit also confirmed that the Court-approved bond posted by Hapag satisfies the requirements of §1335. *Id.* at 153 n. 19. All that remains is for the Court to determine the respective rights of the claimants to the payment obligation at the core of these proceedings. Hapag is not interested in that determination in the

sense that it has not asserted any claim to the interpleaded security.[9] Under the circumstances, discharging Hapag and its Vessels from this case and from further liability with respect to the bunker supply transactions is appropriate in Action 9949.

With respect to the Vienna Express Action, a specific ruling has not yet been made as to the propriety of Hapag's use of the interpleader remedy, but because the Vienna Express Action involves the same parties and same issues as Action 9949, the Court's and Second Circuit's prior rulings approving the use of interpleader in the OW cases should equally apply. Hapag has not yet deposited the disputed funds or posted separate interpleader security in the Vienna Express Action, but has made clear its intention to do so as a substitution for the LOU provided to USOT. The lack of a deposit or the posting of security does not, however, render interpleader inappropriate or prevent Hapag from being discharged in that case. Hapag is still entitled to a discharge in the Vienna Express Action too because interpleader is appropriate, with the discharge being conditioned on the substitution of the LOU with interpleader security either on consent of the parties or order of the Court. *See*, *e.g.*, *Citigroup*, 2007 U.S. Dist. LEXIS 2709, at *27.

## B.   The Counterclaims of OW Germany and ING Do Not Prevent Discharge.

The filing of counterclaims by OW Germany and ING, alleging a breach of contract arising out of Hapag's failure to have already remitted payment for the bunkers to them, does not render discharge inappropriate. The counterclaims assert, at bottom, that OW Germany (and/or ING) is entitled to receive payment from Hapag, and that by not remitting payment and instead

---

[9] To the extent Hapag has already paid OW Germany on the SANTA ROBERTA and desires to avoid having to pay twice for the bunkers supplied to this vessel, Hapag remains interested in defeating USOT's claim that Hapag should be compelled to pay again for these bunkers under a maritime lien theory. Hapag does not however lay claim to the interpleaded security and hence it remains a "disinterested stakeholder." *See Citigroup*, 2007 U.S. Dist. LEXIS 2709, at *23-24 (explaining an interested plaintiff is one who has some claim to the property at issue in the interpleader); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 98-cv-1756, 2001 U.S. Dist. LEXIS 25, at *20 (S.D.N.Y. Jan. 4, 2001) (reasoning Merrill Lynch was a disinterested stakeholder since "[i]t claims absolutely no interest in the funds.").

commencing these proceedings so as to allow the Court to determine to whom the payment obligation is owed, Hapag is guilty of a contractual breach. As explained herein, because the counterclaims are nothing more than a challenge to Hapag's right to have the competing rights to payment determined by a court in an interpleader proceeding, the counterclaims fail and present no impediment to Hapag being discharged from any further liability.

When a plaintiff is entitled to pursue interpleader relief, courts have consistently rejected counterclaims that are essentially based on the plaintiff having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants. *See*, *e.g.*, *U.S. Trust Co. v. Alpert*, 10 F. Supp. 2d 290, 307 (S.D.N.Y. 1998) ("Since the Trustees in bringing their interpleader action thus acted within the rights granted to them by law, counterclaims cannot be grounded upon adherence to such a statutorily authorized procedure."); *see also Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir. 2010) (N.Y. law); *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264-65 (3d Cir. 2009); *Metro. Life Ins. Co. v. Yitao Sun*, No. 12 C 6036, 2013 U.S. Dist. LEXIS 125729, *15-16 (N.D. Ill. Sept. 4, 2013) ("When an interpleader is properly asserted, counterclaims seeking payment of the interpleaded funds are disallowed."); *Reliance Std. Life Ins. Co. v. Winiarski*, No. 2:12-cv-123, 2012 U.S. Dist. LEXIS 61922, *9-10 (W.D. Pa. May 3, 2012); *Lutheran Brotherhood v. Comyne,* 216 F. Supp. 2d 859, 863 (E.D. Wis. 2002).  As a result, to the extent a counterclaim arises from the interpleader plaintiff's failure to resolve the competing claims and the steps it took within the rights granted to it by law in bringing its interpleader action, the counterclaim fails as a matter of law and discharge is still appropriate. *Merrill Lynch,* 2001 U.S. Dist. LEXIS 25, at *20-21 (S.D.N.Y. Jan. 4, 2001).

The Third Circuit's decision in *Hovis* demonstrates the point. The dispute in *Hovis* arose over the payment of the proceeds of a life insurance policy. The decedent, Ms. Shall, originally named her children as beneficiaries, but after she was diagnosed with cancer, she sought to change the owner and beneficiary to Hovis, the agent who sold her the policy and whom the change application identified as her fiancé. She requested expedited processing because of her terminal condition, but Prudential launched an internal investigation and Ms. Shall died before the change was actually implemented. Faced with possible competing claims from Ms. Shall's children and Hovis, Prudential commenced interpleader proceedings. Hovis then counterclaimed, alleging that Prudential had acted negligently and in bad faith in its handling of the policy changes. The district court ruled that interpleader was proper, and as such, Prudential could not be held liable for its handling of the requested policy changes and was entitled to a discharge. The Third Circuit affirmed.

> On appeal, the Third Circuit phrased and answered the question before it as follows:
>
> Does bringing a valid interpleader action shield a stakeholder from further liability to the claimants not only with respect to the amount owed, but also with respect to counterclaims brought by the claimants? We hold that it can where the stakeholder bears no blame for the existence of the ownership controversy and the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants.

The Third Circuit explained, "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy." *Id.* at 265.

A similar result was reached by this Court in *Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, 06-cv-5466, 2015 U.S. Dist. Lexis 137767 (S.D.N.Y. Sept. 25, 2015), where Judge Preska concluded that counterclaims against Citigroup, an interpleader plaintiff, for breach

of contract, conversion, negligence, gross negligence, and breach of the covenant of good faith and fair dealing had to be dismissed. She reasoned that "[b]ecause Citigroup was well within its rights in refusing to transfer the securities to Bear Stearns when faced with a competing claim to the property, KLCC's counterclaims must be dismissed." *See id.* at *45-47.

Like the counterclaims in the above cases, the allegations of OW Germany and ING are nothing more than assertions that Hapag should have forgone its right to bring the contested claims for payment before a court and should have paid OW Germany and/or ING. It is clear however that the only reason that Hapag did not honor their demands for payment was the competing claims from USOT and potentially others. Indeed, Hapag had paid the OW Germany invoice on one of the Vessels before it started to receive competing claims and threats of arrest. Accordingly, OW Germany's and ING's assertions that Hapag should be held in breach for not paying their invoices arise out of actions that Hapag was entitled to take in pursuit of interpleader relief. The counterclaims are thus insufficient as a matter of law and do not bar a discharge from liability as requested.

## II.   HAPAG IS ENTITLED TO AN AWARD OF ITS LEGAL FEES AND COSTS.

Upon discharge and dismissal from these actions, Hapag respectfully requests that this Court grant Hapag its legal fees and costs for filing and participating in these cases, which brought all competing claims before this Court into a single forum, increasing judicial efficiency and avoiding the need for the parties to pursue Hapag and chase the Vessels to attach or arrest them to obtain security.[10] While neither the interpleader statute nor Rule 22 contains an express

---

[10] Given the course of these proceedings, Hapag submits that the substantive right to attorneys' fees should be adjudicated at this juncture. *See Wells Fargo Bank N.V. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 198 (S.D.N.Y. 2011) (considering motion for discharge and attorneys' fees at once, but reserving quantum to be determined after judgment in accordance with Rule 54). Accordingly, Hapag submits it would not be appropriate or practical to adjudicate at this juncture the quantum of an attorneys' fees award as the quantum analysis should be done post-discharge in accordance with Rule 54.

reference to costs or attorney's fees, a district court has discretion to award costs and counsel fees to the interpleader plaintiff whenever it is fair and equitable to do so. *Merrill Lynch*, 2001 U.S. Dist. LEXIS 25, at *20-21; 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed. 2001). A reasonable award of fees and costs to an interpleader plaintiff is appropriate when the plaintiff: (1) is a disinterested stakeholder,[11] (2) has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability. *Septembertide Pub. B.V. v. Stein and Day, Inc.*, 884 F.2d 675 (2d Cir. 1989). An "involved" plaintiff is still entitled to its fees and costs when it becomes involved "not because of [his] own wrongdoing but rather because he is the mutual target of a dispute which is not of his own making." *Banner Life Ins. Co. v. Lukacin*, 13-cv-6589, 2014 U.S. Dist. LEXIS 134675, *8 (D.N.J. Sept. 22, 2014).

In this case, Hapag has met all the above criteria. It claims no interest in the disputed payment obligation, has deposited Court-approved security,[12] has conceded its liability to pay for the bunkers, and has sought discharge through this motion. Additionally, as can be seen from the many OW Bunker-related cases pending before this and other courts, this dispute was not of Hapag's own making.

Furthermore, as can be seen from the docket of these cases (currently consisting of 219 and 169 entries, respectively), the level of participation required of Hapag in these interpleader cases has been unusually high. From early on, Hapag was subject to all manner of contentious and repetitive challenges from the interpleader defendants both before this Court and the Second

---

[11] A disinterested stakeholder in this context is one who makes no claim to the disputed funds or payment obligation. *See*, *e.g.*, *Merrill Lynch*, 2001 U.S. Dist. LEXIS 25, at *20-21.

[12] As explained above, the security posted on the Vienna Express Action consists of a LOU in USOT's favor but Hapag has indicated its willingness to substitute that LOU with security for all claims. To the extent Hapag's discharge is conditioned on that substitution, Hapag submits that it should be entitled to an award of its fees and costs to the same extent as in Action 9949 upon the posting of the substitute security.

Circuit. The contentious issues have included challenges to the Court's exercise of interpleader jurisdiction, the scope of the injunction order, venue, service, and personal jurisdiction. Hapag has also faced multiple efforts to remove the case from this Court, including efforts by OW Germany to have the cases (or at least a portion of them) transferred to the bankruptcy court and by ING to have a London arbitration carve-out added to the injunction order over a year after it was issued.

All these tactics were continued attempts to impeach the integrity of the interpleader process so that the claimants could seek their own independent security and possibly to impose multiple liability on Hapag through conflicting judgments in various jurisdictions. That Hapag had to respond to these tactics to preserve the integrity of the interpleader reinforces Hapag's entitlement to its legal fees and costs. *See*, *e.g.*, *A/S Kredit Pank v. Chase Manhattan Bank*, 303 F.2d 648 (2d Cir. 1962) (party which properly invoked interpleader was entitled to costs and attorneys' fees, where the amount was due in "no small measure" to claimant's "unjustified resistance to interpleader."); *Merrill Lynch*, 2001 U.S. Dist. LEXIS 25, at *21 (S.D.N.Y. Jan. 2, 2001) (fees and costs related to defense of counterclaims in interpleader also recoverable when counterclaims arise from actions taken as a result of being subject to multiple claims and in commencing the interpleader action). This said, Hapag acknowledges that the source of the funding of its award of attorneys' fees and costs is within the Court's discretion. *See Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194-195 (9th Cir. 1962) (noting court discretion to award fees to be paid by the winning claimant, the losing claimant, or divided among them).

## **CONCLUSION**

For the above reasons, Hapag and each of the Vessels are entitled to be released and discharged from any and all liability to the Defendants/Claimants arising out of or relating to the subject bunker transactions, and each Defendant/Claimant should be permanently restrained or enjoined from instituting or prosecuting any action or proceeding against Hapag or the Vessels, whether in rem, in personam or otherwise, for any payment arising out of or relating to the bunker transactions at issue. Additionally, Hapag is entitled to an award of its costs and fees incurred in filing and conducting these proceedings and any other relief as the Court deems appropriate.

Respectfully Submitted,

/s/ Gina M. Venezia

_____

Michael Fernandez (fernandez@freehill.com)
Gina M. Venezia (venezia@freehill.com)
Michael J. Dehart (dehart@freehill.com)
80 Pine Street
New York, NY  10005
(212) 425-1900 / (212) 425-1901 (Fax)
*Attorneys for Hapag-Lloyd Aktiengesellschaft*

450071.1

17

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on May 13, 2016, a true and correct copy of the captioned document was served via ECF upon the following counsel:

John R. Keough, III
Casey D. Burlage
Corey R. Greenwald
CLYDE & CO. US LLP
405 Lexington Ave.
New York, New York 10174
*Attorneys for U.S. Oil Trading LLC*

Bruce G. Paulsen
Brian P. Maloney
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
*Attorneys for ING Bank N.V.*

Justin M. Heilig
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, New York 10006
*Attorneys for O.W. Germany*

Darren T. Azman
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
*Attorneys for O.W. Germany*

/s/ Gina M. Venezia

Gina M. Venezia