# EXHIBIT 10

Page 1

- BORIS GRONENBERG -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BONNY GAS TRANSPORT LIMITED, as        )
owner of the LNG FINIMA (IMO           )
No.7702401),                           ) CASE NO.
                                       ) 14-cv-9542 (VEC)
              Plaintiff,               )
                                       )
     -against-                         )
                                       )
O.W. BUNKER GERMANY GMBH, NUSTAR       )
TERMINALS MARINE SERVICES, N.V.,       )
NUSTAR ENERGY SERVICES, INC.,          )
ING BANK N.V.,                         )
                                       )
              Defendants.              )
-----------------------------------x   )
HAPAG-LLOYD AKTIENGESELLSCHAFT,        )
                                       ) CASE NO.
              Plaintiff,               ) 14-cv-9949 (VEC)
                                       )
     -against-                         )
                                       )
U.S. OIL TRADING LLC, O.W. BUNKER      )
GERMANY GMBH, O.W. BUNKER & TRADING    )
A/S, ING BANK N.V., CREDIT AGRICOLE    )
S.A.,                                  )
                                       )
              Defendants.              )
-----------------------------------x   )
HAPAG-LLOYD AKTIENGESELLSCHAFT,        )
                                       ) CASE NO.
              Plaintiff,               ) 14-cv-10027 (VEC)
                                       )
     -against-                         )
                                       )
O'ROURKE MARINE SERVICES, L.P.,        )
L.L.P., O.W. BUNKER GERMANY GMBH,      )
O.W. BUNKER USA, INC., ING BANK        )
N.V.,                                  )
                                       )
              Defendants.              )
-----------------------------------x
                February 24, 2016
                    9:05 a.m.
         DEPOSITION OF BORIS GRONENBERG

Page 2

```
 1              - BORIS GRONENBERG -
 2   UNITED STATES DISTRICT COURT    )
     SOUTHERN DISTRICT OF NEW YORK   )
 3   ---------------------------------x
     U.S. OIL TRADING LLC,           )
 4                                   ) CASE NO.
          Plaintiff,                 ) 15-cv-6718 (VEC)
 5                                   )
          -against-                  )
 6                                   )
     M/V VIENNA EXPRESS, her tackle, )
 7   boilers, apparel, furniture,    )
     engines, appurtenances, etc.,   )
 8   in rem: M/V SOFIA EXPRESS, her  )
     tackle, boilers, apparel,       )
 9   furniture, engines, appurtenances, )
     etc., in rem,                   )
10                                   )
          Defendants.                )
11   ---------------------------------x
     HAPAG-LLOYD AKTIENGESELLSCHAFT, as )
12   Claimant to the M/V VIENNA EXPRESS, ) CASE NO.
                                     ) ^
13        Counter-Claimant and       )
          Third-Party Plaintiff,     )
14                                   )
          - against -                )
15                                   )
     U.S. OIL TRADING LLC,           )
16                                   )
          Counter-Defendant and      )
17                                   )  Pages 18 - 19
     O.W. BUNKER GERMANY GMBH, O.W.  )  have been
18   BUNKER TRADING A/S, ING BANK N.V., )  designated as
     and CREDIT AGRICOLE CORPORATE AND  )  Highly
19   INVESTMENT BANK, a division or arm )  Confidential
     of CREDIT AGRICOLE S.A.,        )
20                                   )
          Third-Party Defendant.
21   ---------------------------------x
     DATE: February 24, 2016
22   TIME: 9:05 a.m.
23        VIDEOCONFERENCE DEPOSITION OF BORIS
     GRONENBERG, held at the offices of McDermott Will
24   & Emery, 340 Madison Avenue, New York, New York,
     pursuant to Notice, before Hope Menaker, a Shorthand
25   Reporter and Notary Public of the State of New York.
```

Page 4

```
 1              - BORIS GRONENBERG -
 2   APPEARANCES:  (cont'd)
 3   BLANK ROME LLP
        Attorneys for NuStar
 4        717 Texas Avenue, Suite 1400
          Houston, Texas  77002
 5   BY: KEITH B. LETOURNEAU, ESQ. (Via videoconference)
 6
 7   ALSO PRESENT:
        Ms. A.J. Elterman, Interpreter
```

Page 3

```
 1              - BORIS GRONENBERG -
 2   A P P E A R A N C E S
 3   SEWARD & KISSEL LLP
        Attorneys for Defendant ING Bank N.V.,
 4      as Security Agent:
          One Battery Park Plaza
 5        New York, New York 10004
     BY: BRIAN P. MALONEY, ESQ.
 6       LAURA E. MILLER, ESQ.
 7
     FREEHILL HOGAN & MAHAR LLP
 8      Attorneys for Hapag-Lloyd Aktiengesellschaft
          80 Pine Street
 9        New York, New York 10005
     BY: MICHAEL FERNANDEZ, ESQ. (Via telephone)
10       MICHAEL DEHART, ESQ.
11
     CLYDE & CO. US LLP
12      Attorneys for U.S. Oil Trading LLC
          405 Lexington Avenue
13        New York, New York 10174
     BY: CASEY D. BURLAGE, ESQ.
14
15   McDERMOTT WILL & EMERY
        Attorneys for O.W. Bunker Germany GMBH
16        340 Madison Avenue
          New York, New York 10173
17   BY: DARREN AZMAN, ESQ.
         MICHAEL GALEN, ESQ.
18       ULRIKE WITT, ESQ.(via videoconference)
         -and-
19   HILL RIVKINS LLP
          45 Broadway, Suite 1500
20        New York, New York  10006
     BY: JUSTIN M. HEILIG, ESQ. (via videoconference)
21
22   SIMMS SHOWERS LLP
        Attorneys for O'Rourke Marine Services L.P.
23        201 International Circle, Suite 250
          Hunt Valley, Maryland 21030
24   BY: MARIOS J. MONOPOLIS, ESQ. (via teleconference)
25
```

Page 5

```
 1              - BORIS GRONENBERG -
 2         IT IS HEREBY STIPULATED AND AGREED by
 3   and among the attorneys for the respective parties
 4   hereto, that the sealing and filing of the within
 5   deposition be waived.
 6
 7         IT IS FURTHER STIPULATED AND AGREED
 8   that all objections, except as to the form, are
 9   reserved to the time of trial.
10
11         IT IS FURTHER STIPULATED AND AGREED
12   that the within examination and any corrections
13   thereto may be signed before any Notary Public
14   with the same force and effect as if signed and
15   sworn to before this Court.
16
17
18
19
20
21
22
23
24             -o0o-
25
```

Page 30

- BORIS GRONENBERG -

of that e-mail?

A. We have won the stem on the bidding platform and Karl is asking Pablo to ensure a good profit for us.

Q. Then if we look at the next page, Bates-stamped 433, e-mail from Pablo Sanso to Karl-Heinz Selmer and it reads, at least the first part, "Thanks, Karl. $10 metric ton!? That's pretty optimistic I'd say."

Did I read that correctly?

A. Yes.

Q. Then the last sentence of that e-mail says, "Sorry for the mess here, sir. I'll keep you posted."

Did I read that correctly?

A. Yes.

Q. So, these e-mails, you would agree with me, are an exchange between Karl-Heinz Selmer at O.W. Germany and Pablo Sanso at O.W. U.S.A. about the margins to be obtained for the sale of bunkers to the LNG FINIMA correct?

MR. HEILIG: Objection to form.

A. Yes.

Q. Would you agree with me, sir, that in

Page 31

- BORIS GRONENBERG -

an arm's-length transaction between two companies that are not affiliated with each other, that it would be highly unusual for you to share margin information between those companies?

MR. HEILIG: Objection to form.

A. No, because there was an agreed profit sharing agreement between internal offices.

Q. Is that a written document, a written profit sharing agreement?

A. I'm not aware of any written document.

Q. It's just a practice of sharing profits between different offices, correct?

MR. HEILIG: Objection form.

A. Between internal O.W. Bunker offices, yes.

Q. Sir, were you aware of any financial problems involving the O.W. Bunker Group before the collapse in early November 2014?

A. No, not at all.

Q. Let's look at the sales order confirmation which we have marked as Exhibit Number 13.

MR. HEILIG: Keith, what's the Bates

Page 32

- BORIS GRONENBERG -

on it.

MR. LETOURNEAU: The Bates is Bonny Gas 0030 to 0032.

Q. Do you have that in front of you, sir?

A. Yes.

Q. This is the sales order confirmation issued by O.W. Bunker to Nigeria LNG for the supply of bunkers to the LNG FINIMA, correct?

A. Correct.

Q. And it is dated in Hamburg 24 October 2014, correct?

A. Correct.

Q. And it shows the delivery date between 29 October 2014 and 29 October 2014, correct?

A. Correct.

Q. It also identifies the supplier as NuStar, correct, in the middle of the page?

A. Correct.

Q. You would agree with me that this sales order confirmation would have been provided by O.W. Bunker to Nigeria LNG in advance of the actual delivery of the bunkers to the LNG FINIMA,

Page 33

- BORIS GRONENBERG -

correct?

A. Correct.

Q. And it appears, if you look on the lower left-hand portion of the document, it's in very fine print, there appears to be some information about how the document was transmitted.

Do you see that?

MR. HEILIG: Keith, where are you looking?

Q. In the lower left-hand portion of the document. It says, "O.W.B. SG D 119 stand 24102014" and then it has a time in CET.

Do you see that?

A. Yes.

Q. So that appears to be some form of transmittal from O.W. Germany of this document.

Would you agree with that?

MR. MALONEY: Objection to form.

A. I've never seen it before.

Q. Okay. Understood.

MR. LETOURNEAU: I don't know if I have too much more. If I could just take a short break and look over my notes.

Page 50

1                - BORIS GRONENBERG -
2       A.   Yes.
3       Q.   The quantity of 2900 metric tons of
4   fuel oil?
5       A.   Yes.
6       Q.   And the supplier there is U.S. Oil,
7   correct?
8       A.   Correct.
9       Q.   You understand that this transaction
10  was also subject to Hapag-Lloyd's terms and
11  conditions and not O.W. Bunker's terms and
12  conditions?
13      A.   Yes.  On the remarks it always says
14  Hapag-Lloyd's general terms and conditions to
15  apply.
16      Q.   That's the general terms and
17  conditions 2007, correct?
18      A.   Correct.
19      Q.   Okay.
20           MR. BURLAGE:  Justin, please put
21      place before the witness what's been produced
22      at OWG 9949 000367 through 369.
23           This will be marked as 24.
24           (Whereupon, Exhibit 24 was marked at
25      this time.)

Page 51

1                - BORIS GRONENBERG -
2       Q.   Mr. Gronenberg, do you have this
3   document before you?
4       A.   Yes.
5       Q.   Okay.  Do you recognize this as
6   O.W. Germany's sales order confirmation to
7   Hapag-Lloyd for the subject delivery to the SANTA
8   ROBERTA at the port of Tacoma on October 9, 2014?
9       A.   Yes.
10      Q.   Do you see that it's dated 1 October
11  2014?
12      A.   Yes.
13      Q.   Do you see there that the quantity is
14  for 2700 metric tons of fuel oil to the vessel?
15      A.   Yes.
16      Q.   Do you see that the supplier listed
17  here as U.S. Oil?
18      A.   Yes.
19      Q.   Under remarks, is it correct that it
20  also lists Hapag-Lloyd's general terms and
21  conditions 2007 shall apply?
22      A.   Correct.
23      Q.   And is it your view that on this
24  transaction, Hapag-Lloyd general terms and
25  conditions 2007 applied and O.W. Bunker Germany's

Page 52

1                - BORIS GRONENBERG -
2   general terms and conditions did not apply?
3       A.   Yes.
4            MR. BURLAGE:  Okay.  Justin, can you
5       please place before the witness the PDF I
6       sent you this morning which has been produced
7       by Hapag-Lloyd and bears Bates numbers
8       HPL-USOT 00039 through 41.
9            (Whereupon, Exhibit 25 was marked at
10      this time.)
11           MR. BURLAGE:  Please let me know when
12      the witness has that before him.
13           MR. HEILIG:  We're good.
14           MR. BURLAGE:  Thank you.
15      Q.   Mr. Gronenberg, can you please take a
16  look at these three pages and let me know if you
17  have seen this document before.
18      A.   Yes, I've seen it.
19      Q.   Okay.  Do you recall the first time
20  that you have seen this document?
21      A.   No.
22      Q.   Okay.  Let's go to the last page
23  which has been marked HPL-USOT 00041.  On the
24  bottom right-hand of that page appears to be a
25  stamp by O.W. Bunker Germany GmbH with an address

Page 53

1                - BORIS GRONENBERG -
2   in Hamburg and then there's a signature beneath
3   that.
4            Do you recognize that signature?
5       A.   Yes.
6       Q.   Whose signature is that?
7       A.   Mr. Lehsten.
8       Q.   Okay.  What about the -- looks like
9   there's a scribble or an initial on the bottom
10  right of the first two pages of this document.
11           Do you see that?
12      A.   Yes.
13      Q.   Do you recognize that as
14  Mr. Lehsten's initial?
15      A.   Yes.
16      Q.   Okay.  What is your understanding of
17  what this document is?
18      A.   The general terms and conditions
19  which Hapag-Lloyd requests for purchasing bunkers.
20      Q.   Would you agree that this is
21  Hapag-Lloyd's general terms and conditions for
22  what's been listed as 2007 which would apply to
23  the four shipments we just discussed?
24           MR. HEILIG:  Objection to form.
25      A.   When is this dated 2007, yes.  I

Page 54

- BORIS GRONENBERG -

1
2  don't know, is it?
3     Q.  Well, it's a little difficult to
4  tell, but it looks like underneath that stamp
5  there may be a date but I can't tell if that is
6  correct, but -- would this be a document that
7  would have been maintained in O.W. Germany's files
8  in its regular course of business?
9     A.  Yes.
10    Q.  Okay and yesterday Mr. Lehsten
11 testified that as part of a condition with doing
12 business with Hapag, Hapag required O.W. Germany
13 to sell basis Hapag's terms and conditions.
14        Would you agree with that?
15        MR. HEILIG:  Objection to form.
16    A.  Yes.
17    Q.  Is -- that would -- that would apply
18 for these four shipments to your understanding?
19    A.  Yes.
20    Q.  Do you know if O.W. Germany -- let me
21 just back up.
22        You said that you were department
23 manager from 2009 at O.W. Germany in its trading
24 department; is that correct?
25    A.  Correct.

Page 55

- BORIS GRONENBERG -

1
2     Q.  Now, is the trading department the
3  same as the reselling department or the resale
4  department or are those different?
5     A.  No, it's the same just a different --
6        MR. HEILIG:  Finish your answer.
7     A.  Just a different wording or naming
8  it.
9     Q.  But it's the same department then?
10    A.  Yes.
11    Q.  Do you know if O.W. Germany
12 physically supplied fuel on the west coast of the
13 United States at any point in 2014?
14        MR. HEILIG:  Objection to form.
15        MR. DEHART:  Objection to form.
16        MR. FERNANDEZ:  Objection to form.
17    Q.  Are you aware that if O.W. Germany
18 had the capability to supply fuel physically in
19 the port of Tacoma, Washington in 2014.
20        MR. BURLAGE:  Let him answer.
21        MR. HEILIG:  Objection.
22        MR. FERNANDEZ:  Objection to form as
23 well.
24    Q.  Did we have an answer?
25    A.  I said no.

Page 56

- BORIS GRONENBERG -

1
2     Q.  Okay.  Do you know if O.W. Bunker
3  U.S.A. had the capability to supply fuel
4  physically in Tacoma in 2014?
5        MR. HEILIG:  Objection to form.
6        MR. FERNANDEZ:  Objection to form.
7     A.  No.
8     Q.  No, you don't know; or no, they did
9  not have the capability to do so as far as you are
10 aware?
11    A.  As far as I'm aware, they did not
12 have the capability.
13    Q.  Would that be the same with O.W.
14 Germany?
15        MR. HEILIG:  Same objection.
16        MR. FERNANDEZ:  Same objection.
17    A.  Yes.
18        MR. BURLAGE:  Justin, can you please
19 place before the witness what's been produced
20 by O.W. Germany and it bears Bates numbers
21 OWG 9949 - 00446 through 449.
22        Please let me know when the witness
23 has that before him.
24        MR. HEILIG:  He has it.
25    Q.  Mr. Gronenberg, can you please take a

Page 57

- BORIS GRONENBERG -

1
2  look at these couple of pages of documents and let
3  me know when you've completed your review.
4     A.  Okay.
5     Q.  Would you agree that this is an
6  e-mail from Kai Zu to Karl-Heinz Selmer dated
7  October 1st, 2014, with the subject line Re: ENQ
8  SANTA ROBERTA?
9        MR. MALONEY:  Do you have a copy of
10 that?
11        MR. DEHART:  Yes.
12        MR. HEILIG:  Are we marking this as
13 an exhibit?
14        MR. BURLAGE:  I don't know yet, hold
15 on a second, please.
16    Q.  Do we have an answer to that last
17 question, please?
18    A.  Yes.
19    Q.  What do you understand that -- let me
20 back up quickly.
21        Kai Zu, do you know who that is?
22    A.  My colleague in the U.S.
23    Q.  Is that a male or female?
24    A.  A male.
25    Q.  Does he work in the Houston office of

15 (Pages 54 to 57)

Page 58

1            - BORIS GRONENBERG -
2    O.W. Bunker U.S.A., is that correct or did he?
3        A.   Correct.
4        Q.   Did he?
5        A.   Yes.
6        Q.   As you understand it, what is Mr. Zu
7    saying to Mr. Selmer here where he says, "Good
8    morning, Karl.  Let's get it today."
9             And then under Tacoma -- do you see
10   where it says Tacoma?
11       A.   Yes.
12       Q.   Then he lists P66 Tesoro and U.S.
13   Oil.  Are P66 and Tesoro -- what is your
14   understanding of those two companies?
15            MR. HEILIG:  Objection to form.
16       A.   Suppliers in Tacoma.
17       Q.   They're physical suppliers of fuel in
18   Tacoma along with U.S. Oil; is that correct?
19            MR. HEILIG:  Objection to form.
20       A.   Correct.
21       Q.   Do you see where it says in bold,
22   "U.S. Oil let's get the RMK for him"?
23       A.   Yes.
24       Q.   Do you know what that means, "Let's
25   get the RMK for him"?

Page 59

1            - BORIS GRONENBERG -
2            Do you have any understanding of what
3    that might mean?
4        A.   Yes.  Yes, that Kai suggests to Karl
5    to fix -- to fix an RMK with U.S. Oil.
6        Q.   And underneath that "549/MTD for
7    RMK," in bold.  Would that be the price that Kai
8    Zu has conveyed to Karl that has been provided by
9    U.S. Oil?  Is that your understanding?
10            MR. HEILIG:  Objection to form.
11       A.   Yes.
12       Q.   Then under that it says, "Typicals."
13   And then it lists, looks like some numbers for
14   "API/bore, sulphur, aluminum, silicon, sodium,"
15   et cetera.
16            Are those -- is it your understanding
17   that those are also typicals that Kai is giving to
18   Karl that he had received from U.S. Oil?
19            MR. HEILIG:  Objection to form.
20            MR. DEHART:  Objection to form.
21            MR. FERNANDEZ:  Objection to form.
22            MR. MALONEY:  Objection.
23       A.   That's how I understand it, yes.
24       Q.   Now, would O.W. Germany, in this case
25   Mr. Selmer, in its regular course of business,

Page 60

1            - BORIS GRONENBERG -
2    would it then convey those typicals to Hapag?
3        A.   Upon request, yes.
4        Q.   And how would that be done, by phone
5    or by e-mail, do you know?
6        A.   Either way.
7        Q.   Either way.  Okay.  But you don't
8    know in this case if that was done by e-mail or by
9    phone, do you?
10       A.   I don't know.
11       Q.   Okay.  But did you understand that
12   Hapag had instructed that fuel being supplied to
13   this vessel would need certain specifications?
14            MR. HEILIG:  Objection, form.
15            MR. FERNANDEZ:  Objection to form.
16            MR. MALONEY:  Same objection.
17       A.   Not really.
18       Q.   Okay.  In your experience, did Hapag
19   require that the fuel delivered to its vessels
20   have certain specifications?
21            MR. HEILIG:  Objection to form.
22            MR. FERNANDEZ:  Objection to form.
23       A.   Yes.
24       Q.   How do you know that?
25       A.   They would like to see or compare

Page 61

1            - BORIS GRONENBERG -
2    also the typical specifications of the product
3    offered in order to determine which products they
4    find most suitable for their vessels engines.
5        Q.   And so they would use the typicals to
6    determine which fuel they wanted to select to
7    have?
8            MR. HEILIG:  Objection.
9        A.   Not only typicals --
10            MR. FERNANDEZ:  Objection.
11       Q.   I'm sorry, continue.
12       A.   Not only the typicals.  Of course
13   also the price.
14       Q.   So your understanding is that
15   Hapag-Lloyd would consider both the typicals
16   provided by the supplier and the price to
17   determine which set of fuel to purchase?
18            MR. FERNANDEZ:  Objection to form.
19            MR. HEILIG:  Objection to form.
20            MR. HEILIG:  Objection to form.
21       A.   Yes.
22       Q.   Thank you.
23            MR. BURLAGE:  I'll mark this as
24   Exhibit 26, please.
25            (Whereupon, Exhibit 26 was marked at

Page 70

- BORIS GRONENBERG -
1  I have no further questions at this
2  time. Mr. Gronenberg, thank you very much,
3  and with that I'll pass the witness.
4      MR. DEHART: Mike, are you there?
5      MR. FERNANDEZ: I'm thinking if we
6  have any other questions. I don't know if
7  anyone has anything first.
8      MR. AZMAN: Do you want to take a
9  quick two- or three-minute break?
10     MR. MALONEY: Let's take a
11  five-minute break.
12     (Whereupon, there was a brief recess
13  in the proceedings.)
14     MR. AZMAN: Marios, do you want to go
15  next?
16     MR. MONOPOLIS: I'm happy to.
17  EXAMINATION BY MR. MONOPOLIS:
18     Q.   Good morning/afternoon. This is
19  Marios Monopolis, I represent O'Rourke Marine in
20  case number 14 CV 10027.
21     Mr. Gronenberg, can you hear me?
22     A.   Yes, I can hear you.
23     Q.   Okay. Great.
24     I apologize, I'm only participating

Page 71

- BORIS GRONENBERG -
1  by phone today so you can't see me and I can't see
2  you.
3     I'm going to ask you a few questions
4  about O.W. Germany's role in the bunker supply to
5  two Hapag vessels, the DERBY D and the SYDNEY
6  EXPRESS.
7     MR. MALONEY: Mario, you're very low.
8     MR. MONOPOLIS: I apologize, I went
9  on speaker. Let me repeat that question or
10  the statement rather.
11    Q.   I'd like to ask you a few questions
12  about O.W. Germany's role with respect to the
13  bunker supply to two Hapag vessels, the DERBY D
14  and the SYDNEY EXPRESS.
15    Mr. Gronenberg, are you familiar
16  those two vessels?
17    A.   Yes.
18    Q.   Are you familiar with O.W. Germany's
19  role with respect to the supply of bunkers to
20  those vessels?
21    A.   Yes.
22    Q.   Okay. Would you describe for me,
23  please, just in general terms the relationship
24  between O.W. Germany and O.W. U.S.A.

Page 72

- BORIS GRONENBERG -
1    A.   They were our colleagues and the
2  relationship was that they were in charge of
3  procurement of all the group bunkers in the
4  Americas.
5    Q.   Okay. Thank you.
6    Would you happen to know
7  approximately how many transactions occurred
8  between O.W. Germany and O.W. U.S.A. in 2014 and
9  an estimate is fine.
10   A.   No, I could not estimate, although
11  the oil we were overseeing 400 inquiries per month
12  with 200 nominations on average and I don't know
13  which -- how many of them were with the U.S.
14  colleagues. I do not know.
15   Q.   Would it be safe to assume, and I
16  recognize this is an assumption, that O.W. Germany
17  and O.W. U.S.A. collaborated on more than just the
18  supply of the DERBY D and the SYDNEY EXPRESS?
19      MR. HEILIG: Objection to form.
20      MR DEHART: Objection.
21      MR. FERNANDEZ: Objection.
22      MR. HEILIG: You can answer.
23   A.   Yes.
24   Q.   In the transactions between O.W.

Page 73

- BORIS GRONENBERG -
1  Germany and O.W. U.S.A., was there a standing
2  contract or was there contracting on an ad hoc
3  basis?
4      MR. HEILIG: Objection to form.
5    A.   It was based on standard procedures
6  and normal purchase and sales information.
7    Q.   For those purchase and sale
8  confirmations, did any of those purchase or sale
9  confirmations refer a specific set of terms and
10  conditions?
11   A.   That would be the O.W. Bunker Germany
12  terms.
13   Q.   Are the O.W. Bunker Germany terms
14  different than the O.W. general terms and
15  conditions for the whole group?
16   A.   I corrected that, O.W. Bunker Group
17  terms.
18   Q.   Just to be clear, the O.W. Bunker
19  Group terms governed the contractual relationship
20  between O.W. Germany and O.W. U.S.A.; is that
21  correct?
22   A.   Correct.
23   Q.   Okay. Are you familiar with the O.W.
24  Group terms and conditions?

Page 78

- BORIS GRONENBERG -

1  instructed not to answer or he can answer?
2     MR. HEILIG: He can answer, if he
3  knows. Subject to our objection.
4  Q.   Mr. Gronenberg --
5     MR. MONOPOLIS: I'm sorry, would the
6  Court reporter please read back the question.
7     (The question requested was read back
8  by the reporter.)
9  A.   Yes.
10    MR. MONOPOLIS: Thank you. Okay.
11 I've got no further questions. I'll tender
12 the witness.
13    Thank you, Mr. Gronenberg.
14    MR DEHART: Brian, do you have
15 anything?
16    Are you ready, Justin?
17    MR. HEILIG: Yes.
18 EXAMINATION BY MR. HEILIG:
19 Q.   Mr. Gronenberg, my name is Mike
20 Dehart. I'm with the law firm Freehill Hogan
21 Mahar. On the phone is Michael Fernandez, also
22 with Freehill. We represent Hapag-Lloyd in three
23 of the four cases that you've been designated as
24 O.W. Germany's 30(b)(6) witness today which is

Page 79

- BORIS GRONENBERG -

1  case 14 Civ 9949, U.S. Oil case; 14 Civ 10027,
2  which is the O'Rourke Marine Services case; and 15
3  Civ 6718, which is the MV VIENNA EXPRESS case.
4     I have maybe a minute of questions
5  for you today, so try to keep this brief.
6     MR. DEHART: I'd like to go back to
7  what's been marked earlier as Exhibit 25.
8  Get that in front of the witness.
9     MR. HEILIG: It's the general terms
10 and conditions?
11    MR. DEHART: Yes.
12    MR. HEILIG: Do you know what the
13 Bates number is?
14    MR. DEHART: HPL-USOT 3941.
15    THE WITNESS: Okay. I've got it.
16 Q.   Mr. Gronenberg, you testified earlier
17 that these are the Hapag-Lloyd terms and
18 conditions, correct?
19 A.   Correct.
20 Q.   And Hapag-Lloyd required these terms
21 and conditions to apply to all sales that were
22 done by O.W. Germany to Hapag-Lloyd?
23 A.   Correct.
24 Q.   That would include all spot market

Page 80

- BORIS GRONENBERG -

1  sales in the United States?
2  A.   Correct.
3  Q.   That would include all spot market
4  sales for bunkers that were supplied at the Port
5  of Houston?
6  A.   Correct.
7  Q.   That would include all spot market
8  sales the Port of Houston during the month or the
9  months of September and October 2014?
10 A.   Correct.
11 Q.   And these Hapag-Lloyd terms and
12 conditions would apply to the exclusion of O.W.
13 terms and conditions?
14 A.   Yes.
15 Q.   So the O.W. terms and conditions
16 would not apply to any sales done by O.W. Germany
17 to Hapag-Lloyd, correct?
18    MR. MALONEY: Objection to form.
19 A.   Correct.
20    MR. DEHART: That's all I have for
21 you.
22    MR. AZMAN: Keith, do you have any
23 additional questions?
24    MR. LETOURNEAU: I have no further

Page 81

- BORIS GRONENBERG -

1  questions. Thank you, sir.
2     MR. AZMAN: Are there any additional
3  questions from anybody else?
4     MR. HEILIG: I have just a few
5  questions. Just give me one second while I
6  get the documents.
7  EXAMINATION BY MR. HEILIG:
8  Q.   Good afternoon, Mr. Gronenberg. Just
9  a few follow-up questions for you.
10    Earlier we looked at Exhibit 1 to
11 Hapag-Lloyd's First Amended Complaint in action
12 14 Civ 9949.
13    Do you recall seeing this document
14 earlier today?
15 A.   Yes.
16 Q.   And what is this document?
17 A.   They are a contract.
18 Q.   What does ARA contract stand for?
19 A.   Amsterdam, Rotterdam, Antwerp area
20 contract.
21 Q.   What are the ports of delivery
22 identified in the contract?
23 A.   Antwerp and Rotterdam.
24 Q.   What is the relevancy of this

Page 82

```
 1            - BORIS GRONENBERG -
 2   contract to bunker transactions taking place at
 3   U.S. ports in September and October of 2014?
 4       A.    There is no relevance.
 5       Q.    Why is that?
 6       A.    It is this ARA contract, only refers
 7   to supplies in Antwerp and Rotterdam in the period
 8   January 1st to December 31st, 2014.
 9       Q.    Okay.  Now, do you have an
10   understanding of what the differentiation is
11   between a broker and a trader of bunker fuels?
12       A.    Yes.
13       Q.    What is that distinction?
14       A.    The trader sells in his own name and
15   a broker concludes business in the name of the
16   buyer and seller.
17       Q.    Does O.W. Germany or did O.W. Germany
18   fall within one of those two categories?
19       A.    Yes.
20       Q.    Which one?
21       A.    As acting as trader.
22       Q.    Why is that?
23       A.    Because we were buying and selling in
24   our own name.
25           MR. HEILIG:  I'm showing the witness
```

Page 83

```
 1            - BORIS GRONENBERG -
 2   a document previously marked as Exhibit 21,
 3   O.W. Germany production Bates stamp
 4   9949-000380 through 82.
 5       Q.    Mr. Gronenberg, do you recall seeing
 6   this document earlier today?
 7       A.    Yes.
 8       Q.    What is this document?
 9       A.    The sales confirmation to
10   Hapag-Lloyd.
11       Q.    Is there a seller identified on this
12   sales order confirmation?
13       A.    Yes.
14       Q.    Who is the seller?
15       A.    O.W. Bunker Germany.
16       Q.    Is there an account identified on
17   this document?
18       A.    Yes.
19       Q.    And what is the account identified on
20   it?
21       A.    Hapag-Lloyd.
22       Q.    Okay.  Earlier you were asked whether
23   or not U.S. Oil is identified as a supplier on
24   this document.
25           Do you recall that?
```

Page 84

```
 1            - BORIS GRONENBERG -
 2       A.    Yes.
 3       Q.    And do you know what the purpose of
 4   identifying U.S. Oil as the supplier on this
 5   document is?
 6       A.    Yes.
 7       Q.    What is it?
 8       A.    The buyer, Hapag-Lloyd, needs to be
 9   informed who is the supplier for coordination of
10   the supply locally at Tacoma.
11       Q.    Why is that?
12       A.    To make the arrangements locally, the
13   agent has to arrange supplies locally and needs to
14   know who the parties are to inform about the
15   vessels arrival and readiness to take bunkers.
16           MR HEILIG:  That's all the questions
17   I have.
18           MR. AZMAN:  Are there any other
19   questions?
20           MR DEHART:  Mike Fernandez, do you
21   have any questions?
22           MR. FERNANDEZ:  I'm good.
23           MR. AZMAN:  Mario, I assume you're
24   good.
25           MR. MONOPOLIS:  That's correct.
```

Page 85

```
 1            - BORIS GRONENBERG -
 2           MR. MALONEY:  We have no questions at
 3   this time.
 4           MR. BURLAGE:  No further questions.
 5           MR. LETOURNEAU:  No further questions
 6   from Houston.  Just want to talk about the
 7   motion to extend.
 8           MR. AZMAN:  Let's go off the record.
 9           (Whereupon, the deposition concluded
10   at 11:25 a.m.)
```